### Norman J. JOHNSON, Petitioner–Appellee,

v.

### Clarence TRIGG, Respondent–Appellant.

No. 93–1935.

United States Court of Appeals, Seventh Circuit.

Argued March 31, 1994.

Decided June 30, 1994.

Rehearing Denied Aug. 3, 1994.

---

6. The transcripts were not part of the record on appeal.

Dennis J. Majewski, Terre Haute, IN (argued), for petitioner-appellee.

Thomas D. Quigley, Office of the Atty. Gen., General Litigation, Indianapolis, IN (argued), for respondent-appellant.

Before POSNER, Chief Judge, and CUMMINGS and EASTERBROOK, Circuit Judges.

POSNER, Chief Judge.

The district judge in this habeas corpus proceeding held, on the basis of the record of the criminal proceeding in state court, that Norman Johnson's robbery conviction, upheld in *Johnson v. State,* 513 N.E.2d 650 (Ind.1987), had been based on a coerced confession. She ordered the State of Indiana either to release or retry him. 839 F.Supp. 571 (S.D.Ind.1993). The facts, at least as narrated by the district judge (a potentially important qualification), are indeed suggestive of a grave abuse of power by law enforcement authorities. A 14–year–old boy of below-average intelligence is arrested on suspicion of participation in an armed robbery. On the same day his mother is arrested, ostensibly for having failed to bring him in for questioning about a burglary in which he had been implicated five months earlier. She has just been released from the hospital, where she was diagnosed as having ovarian cancer and told that she has only six months, at most a year, to live. She and her son are both kept overnight in the jail. She cannot sleep. The next morning mother and son are tearfully reunited. The police promise the son that if he confesses they will release his mother. He confesses, she is released from jail, and the confession is the cornerstone of the state's case against him. He is convicted and, despite his youth, is sentenced to 38 years in prison.

Were these the only facts, the inference that the confession had been coerced would be a powerful one, although we confess to uncertainty about what it means to say that a confession is coerced or (equivalently) involuntary. The standard formulas (unchanged since *Culombe v. Connecticut,* 367 U.S. 568, 602, 81 S.Ct. 1860, 1879, 6 L.Ed.2d 1037 (1961) (plurality opinion))—the confession was involuntary, was not freely self-determined, was not the product of the de-

fendant's free choice, was made only because his will had been overborne, was the product of coercion—are pretty empty. If all that was meant in deeming a confession coerced were that the efforts of the police had *caused* the defendant to confess, in the (inadequate) sense that he would not have done so had it not been for those efforts, the concept of "coerced confession" would at least be free from ambiguity. But the concept is more limited. Custodial interrogation is permitted even though inherently coercive and doubtless responsible for many a confession, and in addition the courts allow interrogators in these already coercive custodial settings considerable latitude in playing on the guilt and fears of the person interrogated in order to extract a confession that he will shortly regret having given. E.g., *United States v. Miller*, 984 F.2d 1028, 1031–32 (9th Cir.1993); *Self v. Collins*, 973 F.2d 1198, 1205–06 (5th Cir.1992). Justice Frankfurter put it delicately in *Culombe:* "The police may be midwife to a declaration naturally born of remorse, or relief, or desperation, or calculation." 367 U.S. at 576, 81 S.Ct. at 1864. Without midwives, there would be more stillbirths; and without police pressure, there would be more stillborn confessions.

Of course if the pressure exerted by the police is so great that it might induce a person to confess to a crime he had not committed—the pressure that might be exerted, for example, by a credible threat to shoot him on the spot if he didn't confess—the resulting confession will be highly unreliable and should, like other highly unreliable evidence, be excluded from the defendant's trial. Fed.R.Evid. 403. So one possible definition of a confession inadmissible because coerced would be that it had been extracted in circumstances that cast serious doubt on its reliability. That was the approach of the common law. 1 Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure* § 6.2, p. 440 (1984). But modern courts go further and suppress, in the name of due process, even reliable confessions when the police have resorted to tactics thought likely to prevent the suspect from making a rational choice whether to confess or remain silent. *Rogers v. Richmond*, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961); *United States v. Rut-*

*ledge*, 900 F.2d 1127, 1129–30 (7th Cir.1990); *Smith v. Duckworth*, 910 F.2d 1492, 1497 (7th Cir.1990); *Weidner v. Thieret*, 866 F.2d 958, 963–64 (7th Cir.1989). The police might have given the suspect a so-called "truth serum," as in *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), overruled on other grounds in *Keeney v. Tamayo–Reyes*, —— U.S. ——, ——, 112 S.Ct. 1715, 1717, 118 L.Ed.2d 318 (1992), so that he could not exercise any choice at all. Or they might have fed him false information, telling him for example that he would be treated leniently if he confessed, while knowing that he would not be, thus confronting him with false alternatives between which to choose. Cf. *Spano v. New York*, 360 U.S. 315, 323, 79 S.Ct. 1202, 1207, 3 L.Ed.2d 1265 (1959). Whether either tactic would be likely often to induce a false confession may be doubted, but either is likely to induce a confession by someone who would not have confessed had he been allowed to choose with an unfogged mind between the alternatives actually confronting him.

Other tactics should be mentioned. Protracted interrogation might operate like a truth serum in breaking down the suspect's will to resist a course of action (confessing) to which he may already be prompted by shame or guilt. See *Spano v. New York, supra*, 360 U.S. at 322–23, 79 S.Ct. at 1207. And threats not frightening enough to induce an innocent person to confess might be sufficiently intimidating to induce a guilty person, who may have been led to the brink of confession by promptings of guilt or shame, to confess when he would not have done so if left alone. Such a case was *Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). A government informant, a fellow prisoner of Fulminante, told him that he knew that Fulminante was "starting to get some tough treatment and whatnot" from other prisoners because of a rumor that he was suspected of having killed a child, and offered to protect him provided he came clean to the informant—which Fulminante promptly did. *Id.* at 283, 111 S.Ct. at 1250. And, as we are about to see, to be effective in inducing an "involuntary" confession a threat might not have to be directed against the

suspect himself; it might be a threat to his child, spouse, or other loved one.

■ In cases of all these types the confession is suppressed not because it lacks evidentiary quality but because to make a suspect the unwitting agent of his conviction is thought to be inconsistent with the premises of an adversary system of criminal justice. *Culombe v. Connecticut, supra,* 367 U.S. at 582, 81 S.Ct. at 1867; cf. *Miller v. Fenton,* 474 U.S. 104, 110, 106 S.Ct. 445, 449, 88 L.Ed.2d 405 (1985).

All this is provided, however, that the threats, the promises, the misinformation, the confusion, etc. emanate from the police. A defendant who thinks he hears the voice of God directing him to confess may be irrational, but he is not coerced by anyone, let alone by any public officer; and the only coercion that is held to justify the suppression of a confession on federal constitutional grounds is coercion by such officers. *Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). The Constitution has not yet been interpreted to protect people against themselves.

■ We can imagine a case in which the police induce a youngster to confess to a crime by telling him that unless he confesses his mother will be imprisoned. The police threat, operating on an immature, emotional, and, as in this case, a none too quick mind, would be likely to prevent a rational choice whether to confess—a choice, that is, not dictated by overpowering emotion or paralyzing confusion, and based on adequate knowledge of the alternatives bearing on the choice. *In re Gault,* 387 U.S. 1, 45–50, 87 S.Ct. 1428, 1453–56, 18 L.Ed.2d 527 (1967); *Gallegos v. Colorado,* 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325 (1962); *Haley v. Ohio,* 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224 (1948) (plurality opinion). Although there is no rule deeming teenagers, even slow ones, incapable of rational choice, *Fare v. Michael C.,* 442 U.S. 707, 725–27, 99 S.Ct. 2560, 2572–73, 61 L.Ed.2d 197 (1979); *Derrick v. Peterson,* 924 F.2d 813 (9th Cir.1990); *Vance v. Bordenkircher,* 692 F.2d 978 (4th Cir.1982), police tactics that might be unexceptionable when employed on an adult may cross the line when employed against the less devel-

oped reason of a child. A threat to imprison the suspect's mother may be an example. The threat might frighten and distract a child to the point where he could not think straight about whether to confess, yet leave an adult quite cold—and yet a number of cases hold or suggest that hostage-taking is an impermissibly coercive interrogation tactic even where the person being interrogated is an adult. E.g., *Lynumn v. Illinois,* 372 U.S. 528, 83 S.Ct. 917, 9 L.Ed.2d 922 (1963); *Rogers v. Richmond, supra,* 365 U.S. at 536, 541–42, 81 S.Ct. at 739–40; *United States v. Finch,* 998 F.2d 349, 356 (6th Cir.1993); *Ferguson v. Boyd,* 566 F.2d 873 (4th Cir.1977) (per curiam); *United States v. McShane,* 462 F.2d 5, 7 (9th Cir.1972); *Hall v. State,* 255 Ind. 606, 266 N.E.2d 16 (1971); *People v. Trout,* 54 Cal.2d 576, 6 Cal.Rptr. 759, 354 P.2d 231 (1960), overruled in part on other grounds, *People v. Cahill,* 5 Cal.4th 478, 20 Cal.Rptr.2d 582, 853 P.2d 1037 (1993). Obviously the younger the child, the more questionable such tactics are.

■ The facts of this case, however, so far as they can be reconstructed from the state court record (the only record before the district court or this court), are not quite so ominous as the district judge's rendition. of them suggests. When Norman Johnson waived his *Miranda* rights the morning after his arrest, and confessed, and having done so was asked whether he had been promised anything to induce him to talk about the robbery, he and his mother (who was present) both said yes—he had been promised that she would be released from jail. The officer who had arrested Johnson's mother was then brought into the interview room, and explained that the decision whether to release the mother was entirely within the authority of the juvenile court judge who had issued the warrant for her arrest. Norman Johnson then changed his answer to the question about promises to "no." The interrogating officers did not go through the formality of asking him to repeat his confession. It would have been a formality because he had just acknowledged that the confession had *not* been given in response to a promise to release his mother.

It is still possible of course that Johnson confessed only because his mother was arrested and that she was arrested in order to make him confess. But neither point is established by the record. Take the second first. The mother had been told by a probation officer five months earlier to bring in Norman to the juvenile authorities for questioning about a burglary. She had not responded to the order and by not responding had made herself liable to arrest for failure to appear. So at least Johnson must be taken to concede by failing to challenge the state's assertion that the mother was liable to arrest, though we cannot find an Indiana statute which criminalizes a failure to appear in response to an informal command, such as that issued by the probation officer. See Ind.Code §§ 35–33–4–1, 35–44–3–6.

It is true that the warrant for the arrest was not issued until Johnson's accomplice in the robbery made a statement to the police implicating Johnson—in fact accusing him of having shot the victim of the robbery. But until then the mother's failure to appear with Norman in tow had not been regarded as an urgent matter. Now Norman had graduated to armed robbery and had shot a man. This activated the machinery of enforcement and led to the mother's arrest, and would have done so whether or not the police planned to interrogate her son. The arrest turned out to be unnecessary for the purpose for which it was made—to get hold of Norman—because by the time the warrant was executed he had turned himself in. By then it was too late at night to process his mother out of jail. One can speculate—but there is no evidence—that this was a pretext, and that really the mother was retained in order to put pressure on Norman to confess. Equally plausibly, however, she may have been retained simply to enable a waiver of her son's *Miranda* rights, for under Indiana law at the time an effective waiver of a minor's *Miranda* rights required parental consultation. *Douglas v. State,* 481 N.E.2d 107, 111 (Ind. 1985); *Lewis v. State,* 259 Ind. 431, 288 N.E.2d 138, 142 (1972).

It appears that the state trial judge who ruled that Norman's confession was admissible did not think the mother's presence connected to the confession. Norman had run away from home six months previously and had not tried to visit his mother in the hospital. When at the hearing on the admissibility of the confession the prosecutor was cross-examining Norman on his whereabouts during this period, Norman's lawyer objected on grounds of relevancy and the judge overruled the objection, remarking, "[Norman's] whole case here is based on the fact that he had all this concern for his mother and his little brother and the six months before that he's running away from them, you know? And—it just doesn't hold water."

We should consider how much if any deference the district judge should have given this finding (if that is the word for it). (She gave it none.) The habeas corpus statute says only that the state court's finding "shall be presumed to be correct," 28 U.S.C. § 2254(d); this has been interpreted to mean given "great deference," *Arizona v. Fulminante, supra,* 499 U.S. at 287, 111 S.Ct. at 1252, and in practice the deference is complete provided all the statutory conditions are satisfied. But the qualification is important, because there are a number of conditions. Remarkably, considering the enormous volume of federal habeas corpus litigation, there is no definitive ruling on what the statutory conditions add up to—or, stated differently, on what, when section 2254(d) is read as a whole, the standard of federal habeas corpus review of state court findings of fact is. Professor Yackle observes cautiously that it probably is either the clearly-erroneous rule that guides federal appellate review of findings of fact by federal district courts or the substantial-evidence rule that guides judicial review of findings of fact made by a federal administrative agency—an example, parallel to federal habeas corpus by state prisoners, of federal judicial review of an adjudicative body located within a different branch of government. Larry W. Yackle, *Postconviction Remedies* § 127 (1981). Equally remarkable, it is unclear whether the two rules are different. We suspect they are not; that there is deferential review, and plenary review, and that the verbal distinctions within the deferential category (clear error, substantial deference, abuse of discretion) have little consequence in practice.

*Morales v. Yeutter,* 952 F.2d 954, 957 (7th Cir.1991); *Haugh v. Jones & Laughlin Steel Corp.,* 949 F.2d 914, 917 (7th Cir.1991); *United States v. McKinney,* 919 F.2d 405, 421–23 (7th Cir.1990) (concurring opinion). Perhaps recognition of this reality explains the failure of the courts to decide what *exactly* the standard of federal habeas corpus review of state court findings of fact is: it may not matter what exactly it is.

■ Now one of the statutory conditions, a condition implicit as it happens in any review of findings other than those made by juries and arbitrators, is that there must be "reliable and adequate written indicia" of the state court's finding; and here there was only an oral finding—but it was transcribed and that is all that is required. *Wainwright v. Witt,* 469 U.S. 412, 430, 105 S.Ct. 844, 855, 83 L.Ed.2d 841 (1985); *United States ex rel. Smith v. Fairman,* 769 F.2d 386, 395 n. 8 (7th Cir.1985). Far more serious is the fact that the so-called finding was simply an observation offered in the course of a ruling on an objection to evidence. The findings to which deference is due under section 2254(d) are "determination[s] made] after a hearing" and resolving "the merits of the factual dispute." §§ 2254(d) and (d)(1). The state judge's casually remarking in the midst of the hearing "it just doesn't hold water" is not such a determination. See *Kimmelman v. Morrison,* 477 U.S. 365, 389, 106 S.Ct. 2574, 2590, 91 L.Ed.2d 305 (1986); *Jones v. Jones,* 938 F.2d 838, 842 (8th Cir.1991); *United States ex rel. Smith v. Fairman, supra,* 769 F.2d at 395. This would not be important if the judge had repeated the finding when he ruled at the end of the hearing on the motion to suppress the confession. But his formal ruling on the motion to suppress is missing from the record. At the trial he made some remarks about the ruling but did not suggest that it had been based on a determination that the presence of Johnson's mother was not critical to the confession.

The state asks us to defer to the findings made by the state *appellate* court. The division of functions between different tiers of a state judiciary is no business of the federal courts, so we are as obliged to defer to a finding of fact made by a state appellate court as to a finding of fact made by a state trial court, provided the statutory conditions for deference are satisfied. *Sumner v. Mata,* 449 U.S. 539, 546–47, 101 S.Ct. 764, 768–69, 66 L.Ed.2d 722 (1981). But the Supreme Court of Indiana, while endorsing the state's version of the facts, did not purport to make independent findings concerning the circumstances of Norman Johnson's interrogation. The court's conclusion that the confession was not coerced cannot be treated as a finding on the essential subsidiary facts demonstrating its voluntariness. *United States ex rel. Cole v. Lane,* 793 F.2d 155 (7th Cir.1986) (per curiam).

■ But even if, in light of the absence of a finding to which we are obliged to accord respect, we assume that Norman Johnson would not have confessed but for his mother's presence, so long as the arrest was bona fide and not a pretext intended to extract a confession it would no more justify the suppression of the confession than if the confession had been induced by feelings of guilt, or voices, or arm-twisting by a private person. The police cannot be penalized for a proper arrest, merely because the arrest serendipitously induces someone else to confess. *United States v. Carter,* 910 F.2d 1524 (7th Cir.1990). Norman's mother was arrested when her failure to produce him to the probation office turned out to have grave consequences, and, so far as appears, she was retained overnight because it was too late to process her out of jail.

■ That her arrest tipped the balance to confession is more than doubtful, moreover, even without the benefit of a proper finding by the state courts. Norman was only one month short of his fifteenth birthday and already a hardened criminal, with arrests for armed robbery, burglary, shoplifting (a gun)—and running down a small child with his motorcycle and fleeing the scene of the accident. He had been a fugitive for months, and turned himself in before he knew that his mother had been arrested. His mother did not have a terminal cancer; she is alive to this day. She may have been diagnosed as having terminal cancer, but there is no showing that Norman learned this before he confessed. All things considered, the police

did not, at least so far as the record before the district court disclosed, overstep the bounds that separate permitted from forbidden efforts to extract a confession.

Although we disagree with the district judge's conclusion concerning the voluntariness of Norman Johnson's confession, it does not follow that we are authorized to reverse her. It is true that the Supreme Court has held that voluntariness is a question of law, *Miller v. Fenton, supra,* 474 U.S. at 110, 106 S.Ct. at 449, and it is also true that appellate review of answers given by district judges to such questions normally is plenary; but members of this court have questioned the applicability of this precept to this particular question of law. *United States v. Wildes,* 910 F.2d 1484, 1485 (7th Cir.1990), and cases cited there. That a federal judge must give a state judge's finding of voluntariness a fresh look in a habeas corpus proceeding does not imply that three more federal judges must do likewise, especially since a determination that a particular confession given under particular circumstances was or was not coerced establishes no general rule that might guide and harmonize the decisions of district judges. An important reason for plenary review is to enable the establishment of rules that will assure that cases with the same facts are decided the same way by different judges. *Mars Steel Corp. v. Continental Bank, N.A.,* 880 F.2d 928, 933–36 (7th Cir.1989) (en banc); *Mucha v. King,* 792 F.2d 602, 605–06 (7th Cir.1986). An appellate court's deciding that a particular confession was or was not coerced, unlike a decision about the meaning or content of a statutory or common law rule or standard, will not produce such assurance. Outcomes will vary as much among appellate panels as among trial judges. *United States v. Rutledge, supra,* 900 F.2d at 1129.

Even if, in accordance with this analysis, the proper standard of appellate review in this case is (as we need not decide, however) clear error, we must reverse. The only arguably improper pressure that the police exerted to get Norman to confess—once the alleged promise to release his mother is set aside as having been acknowledged by Norman himself not to have been an induce-ment—was to arrest his mother. While her arrest may, despite what the state trial judge appears to have thought, have played a role in Norman's decision to confess, there is no basis in the record to conclude that it prevented him from making a rational decision whether to confess. Despite his youth he was an experienced criminal, and he was estranged from his mother. The police did not subject him to protracted interrogation or feed him lies or promises. It is an implausible speculation that but for his mother's arrest Norman Johnson would not have confessed. Implausible or not, the effect of the arrest on his decision to confess could be used to invalidate the confession only if the arrest was made in order to induce him to confess. If it was made to help locate him, the fact that it played a role in his confession would be immaterial. *A* cannot complain about having been induced to confess by the bona fide arrest of *B,* as that would force the police to forgo a perfectly proper arrest in order to protect the possibility of interrogating a suspect in a different crime. Besides the *Carter* decision, cited earlier, see *United States v. Jackson,* 918 F.2d 236, 241–42 (1st Cir.1990); *United States v. Tafoya,* 459 F.2d 424, 426–27 (10th Cir.1972); cf. *United States v. Charlton,* 565 F.2d 86, 88–89 (6th Cir. 1977); *United States v. Brown,* 540 F.2d 1048, 1052–53 (10th Cir.1976).

We add that there is no serious doubt that Norman was guilty of the adult crime for which he was sentenced and that while the sentence was harsh considering the defendant's youth, it was not barbarous. In Indiana a 38–year sentence means 19 years if the prisoner behaves himself, because one day of good time credit can be earned for every day served. Ind.Code §§ 35–50–6–3, 35–50–6–4.

Although we think it plain that on the record before her the district judge erred in concluding that Johnson's confession had been coerced, this does not end the case. The record before her was the record of the proceedings in state court. She conducted no evidentiary hearing. Although the record of the state proceedings does not establish Johnson's entitlement to relief, we cannot exclude the possibility that an evidentiary

**646**

hearing would establish such entitlement. The statutory conditions for deference to the state court's finding that the confession was not coerced have not been satisfied, as we have seen, and if Johnson can show that the arrest of his mother was a pretext and did prevent his making a rational choice whether to confess, he is entitled to relief. Unlike *McGeshick v. Fiedler*, 3 F.3d 1083, 1086 (7th Cir.1993), and many similar cases, the facts alleged by Johnson would, if proved, establish a violation of the Constitution. See also *Matta–Ballesteros v. Henman*, 896 F.2d 255, 258–59 (7th Cir.1990). He is therefore entitled to an opportunity to try to prove them.

The judgment of the district court is reversed and the case is remanded for further proceedings consistent with this opinion.

REVERSED.