UNITED STATES of America ex rel. Myron John KYTKA, Petitioner,

v.

**Odie WASHINGTON, Director of the Illinois Department of Corrections, Respondent.**

No. 95 C 4474.

United States District Court, N.D. Illinois, Eastern Division.

March 13, 1996.

Richard Stephen Kling, IIT Chicago—Kent College of Law, Chicago, IL, for petitioner.

Steven R. Splitt, Illinois Attorney General's Office, Chicago, IL, for respondent.

## MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge:

Myron Kytka brings this petition pursuant to 28 U.S.C. § 2254, seeking a writ of habeas corpus against Odie Washington, Director of the Illinois Department of Corrections. In October 1989, Kytka was convicted of possessing a controlled substance with the intent to distribute it, and was sentenced to twenty-six years in custody. He claims that habeas relief is appropriate because his trial and appellate counsel performed below constitutional standards. For the reasons set forth below, the petition is denied.

### I. Background

At the outset, we observe that Kytka asserts in his petition that the fact-finding of the Illinois state courts was deficient, and therefore an evidentiary hearing in this court is necessary. Petition ¶¶ 51–59. However, he does not articulate any structural defects in the fact-finding process that would justify our rejection of these findings, see 28 U.S.C. § 2254(d)(1)–(7). Indeed, as discussed below, the factual elements of his ineffective assistance of counsel claims were thoroughly litigated in an evidentiary hearing on his state post-conviction petition. See Resp. Ans., Exs. K–N. Moreover, the petitioner has wholly failed to demonstrate that the material findings of the state court are "not fairly supported by the record." 28 U.S.C. § 2254(d)(8). Consequently, as no real challenge to their veracity has been mounted, we may presume the correctness of the factual findings contained in the written opinions and transcribed oral rulings of the state courts. See Johnson v. Trigg, 28 F.3d 639, 643–44 (7th Cir.1994).

The following is a summation of the relevant portions of these findings. In May 1989, employees at United Parcel Service ("UPS") in Fort Lauderdale, Florida, opened a package addressed to Myron Kytka of Hawthorne Woods, Lake County, Illinois.[1] Inside they found approximately one kilogram of a white, powdery substance that subsequently tested positive for cocaine. UPS notified local law enforcement authorities, who then took the package and delivered it to law enforcement agents of the

---

1. Apparently, the package had been labelled as containing hazardous materials, and UPS policy requires such packages to be opened and examined before being shipped on an aircraft. Resp. Ans., Ex. I, at 2.

Lake County Metropolitan Enforcement Group ("LCMEG") in Lake County, Illinois.

After receiving the package, LCMEG agent Wayne Hunter arranged with other agents to conduct a controlled delivery of the package to Kytka's address. On May 18, 1989, LCMEG agents posed as UPS employees and drove to the petitioner's home in a UPS delivery truck. While agent Sylvester Hampton went to Kytka's front door to deliver the cocaine package, several other agents in the back of the UPS truck maintained a radio-to-telephone link with agent Hunter, who was in the chambers of Lake County Judge Harry Hartel with a complaint for a search warrant and an unsigned search warrant. The complaint requested authority to search:

> A. The person of any and all persons within the residence described in paragraph "B"
>
> B. The following described property the residence located at the common mailing address of 16 Sequoia, Hawthorne Woods, Lake County, Illinois. The residence is a two-story gray colored single family home with a two-car attached garage. The roof of the residence is grey shingle with blue trim. The front of the residence faces west. There is a chimney on the east side of the residence and the numbers 16 appear in bronze to the right of the front door.

Resp.Ans., Ex. I, at 1. The complaint also sought the seizure of "cocaine, United State's [sic] Currency, scales and other paraphernalia used in the packaging and processing of cocaine and evidence of residency and occupancy." *Id.* The warrant to be signed by Judge Hartel contained the same description of the house at 16 Sequoia, and the same list of items to be seized by officers. However, with regard to the scope of the authorized search, the warrant simply stated that agents could search "any and all persons within the residence described as the residence located at the common mailing address of 16 Sequoia, Hawthorne Woods, Lake County, Illinois." Resp.Ans., Ex. H, at 1.

At approximately 11:18 a.m., Hampton delivered the package to Kytka—who told the agent that he was expecting a package from Florida and signed for it—and agents in the back of the UPS truck notified Hunter that the delivery had been made. Hunter then informed Judge Hartel's staff of the delivery and asked them to retrieve the judge from the bench to sign the warrant and complaint. Judge Hartel, who had previously read the complaint and warrant, returned to his chambers where he signed and dated these documents.[2]

Hunter then informed the other LCMEG agents that the warrant had been signed, and they proceeded to search Kytka's house. In addition to finding the package containing one kilogram of cocaine just inside the door, they also found a briefcase containing cannabis plants, a loaded .22 caliber handgun, $5000 in cash, 3.41 grams of cocaine, and three glass vials of the type used to store powdered cocaine. The search also turned up several small packages of cannabis and a cocaine processing kit in Kytka's basement. Finally, in Kytka's bedroom, agents found a key ring with five safety deposit box keys. LCMEG agents later used these keys to obtain search warrants for five safety deposit boxes at various banks, where they found almost $250,000 in cash.

Prior to trial Kytka's attorney filed a motion to suppress the evidence seized from the house, contending that there was no probable cause to search the house, or if probable cause existed, it was only to seize the package of cocaine delivered by the LCMEG agents. Petitioner later filed a second motion to suppress the $250,000 seized from his safety deposit boxes, arguing that agents should not have taken the safety deposit box keys from his house because they were not mentioned in the warrant as items to be seized. Both of these motions were denied, and after a bench trial Kytka was convicted of possessing more than 900 grams of a controlled substance with the intent to distribute, and of possessing a smaller quantity

---

**2.** Although Judge Hartel initially wrote on the warrant that the time was 11:45 a.m., after noticing his mistake he crossed out this notation and wrote down the correct time of 11:21 a.m. Resp. Ans., Ex. N, at 43.

of cannabis. Petitioner was sentenced to twenty-six years in custody.

On direct appeal Petitioner challenged, among other things, the trial court's denial of his two motions to suppress. In an unpublished order the Illinois Appellate Court rejected Kytka's evidentiary claims based on the doctrine of waiver, noting that Kytka had failed to cite any authority to support his argument that police manufactured probable cause, had failed to present any evidence at the suppression hearing, and had neglected to include a copy of the warrant and complaint in the appellate court record. In addition, the court rejected the petitioner's claims on the merits. Kytka's petition for leave to appeal to the Illinois Supreme Court was denied.

Kytka then filed a post-conviction petition in the Circuit Court of Lake County, claiming ineffective assistance of trial and appellate counsel and again challenging the 1989 search of his home. Specifically, he maintained that trial counsel was ineffective for failing to introduce any evidence to support the first motion to suppress the fruits of the May 18 search warrant, and appellate counsel was ineffective for neglecting to include copies of the warrant and complaint in the appellate record and not challenging trial counsel's ineffectiveness. In a supplemental petition, Kytka raised an additional ground of ineffectiveness: the failure of both appellate and trial counsel to challenge the scope of the May 18 search of his house, since the warrant only authorized the search of "any and all persons within the residence" described in the warrant. The post-conviction court held an evidentiary hearing at which agent Hunter, Judge Hartel, Kytka's trial counsel, and

his appellate counsel testified. The court found that the search warrant was signed by Judge Hartel after the package was delivered to Kytka's residence, and that the search occurred after the warrant was issued. Resp.Ans., Ex. N, at 47. In addition, the court concluded that the search of Kytka's home did not violate the Fourth Amendment, and therefore the petitioner did not suffer any prejudice due to trial and appellate counsels' missteps. *Id.* at 51–52. On appeal from this decision, the Illinois Appellate Court held in an unpublished order that neither Kytka's trial nor appellate counsel was ineffective.[3] The Illinois Supreme Court denied leave to appeal this decision.

■ Kytka then filed the instant petition for habeas corpus relief, wherein he essentially raises two arguments to support his claim that he was denied effective representation by his trial and appellate counsel. First, he contends that his attorneys failed to effectively argue that the May 18 search of his home exceeded the scope of the warrant signed by Judge Hartel, which only authorized the search of "persons" at the residence. Second, he contends that his lawyers should have adequately argued that because safety deposit keys were not included in the warrant as items to be seized, agents illegally took them from his home and thus rendered the subsequent search of the safety deposit boxes and seizure of $250,000 improper.[4]

## II. Discussion

Kytka seeks a writ of habeas corpus, which we may only grant if his incarceration is "in violation of the Constitution or laws or trea-

---

**3.** In reaching this conclusion, the appellate court found that (1) the interlineation of "11:45" on the warrant, and its replacement with "11:21," was a "non-issue," (2) the statement in the complaint that probable cause was based in part on "interrogation and investigation" was justified, (3) the Illinois Appellate Court on direct appeal had already determined, *sub silentio*, that the search of Kytka's home and the seizure of his safety deposit box keys were constitutional, and in any event were protected by the good-faith exception to the exclusionary rule, and (4) the issuance of the warrant based on agents' telephonic communications was justified.

**4.** In addition, Petitioner challenges the state court's holding on appeal from his post-conviction petition that these issues were raised and actually rejected *sub silentio* on direct appeal. However, a claim of error based solely on the application of state law is not cognizable in a federal habeas corpus petition. *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 479–80, 116 L.Ed.2d 385 (1991); *Stephens v. Miller*, 13 F.3d 998, 1001 (7th Cir.) (*en banc*), cert. *denied*, —— U.S. ——, 115 S.Ct. 57, 130 L.Ed.2d 15 (1994). Alternatively, to the extent these claims are merely challenges to the factual findings of the state courts, we reject them for the reasons discussed above, *supra* at 501–02.

ties of the United States." 28 U.S.C. § 2254(a); *Del Vecchio v. Illinois Dept. of Corrections,* 31 F.3d 1363, 1370 (7th Cir.1994) (*en banc* ), *cert. denied,* —— U.S. ——, 115 S.Ct. 1404, 131 L.Ed.2d 290 (1995). Here, Kytka claims that his attorneys, by failing to adequately present certain evidentiary arguments, denied him the effective representation guaranteed by the Sixth Amendment.[5] The petitioner has exhausted his state court remedies, 28 U.S.C. § 2254(b), and the respondent does not contend that any independent and adequate state procedural rule bars Kytka's claims, *see Hogan v. McBride,* 74 F.3d 144, 147 (7th Cir.1996). Accordingly, we proceed to the merits.

 To claim that he suffered a constitutional deprivation due to his counsels' omissions, Kytka "must establish that his attorney[s'] performance fell below an objective standard of reasonableness and that he was prejudiced by his attorney[s'] error such that the result of the proceeding was rendered fundamentally unfair or unreliable." *Mason v. Godinez,* 47 F.3d 852, 855 (7th Cir.) (citing *Lockhart v. Fretwell,* 506 U.S. 364, 369, 113 S.Ct. 838, 842, 122 L.Ed.2d 180 (1993) and *Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984)), *cert. denied,* —— U.S. ——, 116 S.Ct. 125, 133 L.Ed.2d 74 (1995). Where an attorney's alleged incompetence is the failure to effectively suppress evidence, "the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison,* 477 U.S. 365, 375, 106 S.Ct. 2574, 2583, 91 L.Ed.2d 305 (1986). In this case we need not address whether counsel abdicated their constitutional responsibility to perform in an objectively reasonable manner, since Kytka cannot dem-

onstrate that their alleged failures caused him actual prejudice. *See Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.").

 Petitioner first contends that trial counsel was ineffective by failing to successfully challenge the search of his house. He bases his claim on the fact that the warrant signed by Judge Hartel only approved a search of "any and all persons within the residence," and did not explicitly sanction the search of the house itself. It is true that in order to avoid the Fourth Amendment prohibition against general warrants, a warrant must state with particularity the place to be searched and the objects to be seized. *United States v. Nafzger,* 965 F.2d 213, 215 (7th Cir.1992). Moreover, once a warrant has been issued, the Fourth Amendment prohibits law enforcement officers from executing a search that exceeds the scope of that warrant. *Horton v. California,* 496 U.S. 128, 140, 110 S.Ct. 2301, 2309–10, 110 L.Ed.2d 112 (1990). However, regardless of whether the search in this case exceeded the scope of what was authorized by Judge Hartel,[6] the evidence discovered by the search would not be excluded if "the officers reasonably believed that the search they conducted was authorized by a valid warrant." *Massachusetts v. Sheppard,* 468 U.S. 981, 988, 104 S.Ct. 3424, 3427, 82 L.Ed.2d 737 (1984); *see also United States v. Leon,* 468 U.S. 897, 922–23, 104 S.Ct. 3405, 3420–21, 82 L.Ed.2d 677 (1984) (establishing "good-faith" exception to exclusionary rule). Thus, if we conclude that the search of Kytka's home fell within the "good-faith" exception to the exclusionary rule, the failure of his attorneys to vigorously challenge the search will not amount to constitutional error.

---

5. Of course, this constitutional guarantee is only applicable to the states through its incorporation into the Fourteenth Amendment. Nonetheless, for simplicity we shall refer to the right to effective assistance of counsel as arising from the Sixth Amendment.

6. It could be argued that the scope of the warrant was delineated not only by the language of the warrant, but also by the text of the sworn

complaint attached to the warrant and used by Judge Hartel to determine probable cause. *See Nafzger,* 965 F.2d at 215 (noting that particularity requirement may be satisfied "by the affidavit supporting the search warrant (if properly incorporated)"). Because the respondent does not advance this argument, however, we decline to address its merits.

*Sheppard* is particularly germane to the instant case. In *Sheppard*, a police detective seeking a warrant to search a murder suspect's home prepared an affidavit outlining his reasons for believing that evidence linking the suspect to a murder would be found. Because the detective could not locate the proper warrant form for a murder investigation, he completed a form that was intended to be used to search for controlled substances. He deleted the subtitle "controlled substance" from the top of the warrant, but did not correct the remainder of the document. When he went to the judge's residence and presented him with the affidavit and warrant, the detective indicated that the warrant was on a form usually used in the search for controlled substances. The judge acknowledged that there were discrepancies in the warrant and made several changes to the document. He then signed and dated the warrant and told the detective that the appropriate changes were made. However, neither the judge nor the detective amended the portion of the warrant authorizing a search for controlled substances in order to indicate that agents could search for the items outlined in the affidavit. Although the officers kept their search within the scope of the affidavit, and discovered several pieces of evidence linking the suspect to the murder, the warrant did not explicitly authorize a search for anything more than narcotics. The Court held that because the officers believed the warrant authorized the search they conducted, and this belief was objectively reasonable, the evidence did not need to be excluded from trial. *Sheppard*, 468 U.S. at 988–90, 104 S.Ct. at 3427–29. The Court reasoned:

> Suppressing evidence because the judge failed to make all the necessary clerical corrections despite his assurances that such changes would be made will not serve the deterrent function that the exclusionary rule was designed to achieve.

*Id.* at 991, 104 S.Ct. at 3429. Thus, even if officers conduct a search that exceeds the strict textual scope of a warrant, if they possess an objectively reasonable belief that the warrant authorizes their search, federal law will not require the suppression of evidence that is uncovered. *See United State v.*

*Curry*, 911 F.2d 72, 78 (8th Cir.1990) (holding *Sheppard* applicable to warrant that did not identify premises to be searched), *cert. denied*, 498 U.S. 1094, 111 S.Ct. 980, 112 L.Ed.2d 1065 (1991); *United States v. Bonner*, 808 F.2d 864, 866–67 (1st Cir.1986) (same), *cert. denied*, 481 U.S. 1006, 107 S.Ct. 1632, 95 L.Ed.2d 205 (1987); *see also United States v. Beaumont*, 972 F.2d 553, 561–62 (5th Cir.1992) (deeming *Sheppard* applicable to warrant that did not specify what items were to be seized), *cert. denied*, 507 U.S. 1054, 113 S.Ct. 1953, 123 L.Ed.2d 657 (1993); *United States v. Anderson*, 851 F.2d 384, 388–89 (D.C.Cir.1988) (same), *cert. denied*, 488 U.S. 1012, 109 S.Ct. 801, 102 L.Ed.2d 792 (1989).

In this case, the complaint for search warrant that agent Hunter presented to Judge Hartel sought permission to search "the residence located at the common mailing address of 16 Sequoia, Hawthorne Woods, Lake County, Illinois." This request was immediately followed by a detailed description of Kytka's house. The complaint asked for authorization to seize cocaine, currency, scales, drug paraphernalia, packaging and processing equipment, and evidence of Kytka's residency and occupancy in the house. This seizure request was contained in the warrant, as was the description of the property at issue. Although the warrant did not explicitly state that the residence could be searched, there is no indication that the officers believed their search was unauthorized by the warrant. Indeed, the Illinois Appellate Court found on direct appeal that the agents possessed a good-faith belief in the validity of the warrant. Resp.Ans., Ex. A, at 8.

Moreover, it was objectively reasonable for the agents to believe that they were authorized to search Kytka's house. The search did not commence until Kytka accepted the cocaine from an undercover agent and brought it into the house. The warrant permitted the seizure of the one kilogram of cocaine delivered to the petitioner, as well as "scales and other paraphernalia used in the packaging and processing of cocaine." Rather than finding these materials on Kytka's person, it is more reasonable to assume that these items would be stashed away in his

house. Most importantly, Judge Hartel had read the complaint and the warrant, and authorized the search. Given that the complaint clearly contemplated the search of both Kytka and his house, it was reasonable for Hunter and the other LCMEG agents to rely on the judge to approve such a search. *See Sheppard*, 468 U.S. at 989–90, 104 S.Ct. at 3428–29. True, as distinguished from the officer in *Sheppard*, Hunter did not point out any errors in the warrant when he presented it to Judge Hartel. Nonetheless, so long as these documents were not completely bereft of probable cause, or so facially deficient as to preclude Hunter's objectively reasonable reliance, *Sheppard* may still apply. *United States v. Michaelian*, 803 F.2d 1042, 1047 (9th Cir.1986).[7] Here, we believe that Hunter and the other LCMEG agents were objectively reasonable in their belief that the search of Kytka's house was authorized, and therefore federal law would not prohibit the introduction of the evidence seized during that search.[8] Accordingly, because the admission of this evidence did not render Kytka's trial fundamentally unfair or unreliable, the alleged failure of counsel to adequately challenge the search did not violate Petitioner's Sixth Amendment rights.

Kytka's second claim of ineffectiveness is that his attorneys failed to adequately challenge the seizure of the five safety deposit box keys, and the subsequent search of the deposit boxes containing $250,000. He argues that the confiscation of the keys was illegal because the warrant did not state that such items should be seized. However, a warrantless seizure will not offend the Constitution if it falls within the "plain-view" exception to the warrant requirement. *See Horton*, 496 U.S. at 136–37, 110 S.Ct. at 2307–08; *Arizona v. Hicks*, 480 U.S. 321, 326–27, 107 S.Ct. 1149, 1153–54, 94 L.Ed.2d 347 (1987); *Coolidge v. New Hampshire*, 403 U.S. 443, 465, 91 S.Ct. 2022, 2037–38, 29 L.Ed.2d 564 (1971) (plurality opinion). The "plain-view" doctrine requires that (1) the seizing officer be lawfully in a position to plainly view the object, (2) the evidence's incriminating nature be "immediately apparent," and (3) the officer possess "a lawful right of access to the evidence itself." *See Horton*, 496 U.S. at 136–37, 110 S.Ct. at 2308. The first and third of these requirements are easily met. As discussed above, the LCMEG agents possessed a good-faith basis for believing that they could search Kytka's home, and thus they were lawfully in a position to observe the keys.[9] They also possessed "a

---

7. In *Leon*, the Court observed:

 If exclusion of evidence obtained pursuant to a subsequently invalidated warrant is to have any deterrent effect, therefore, it must alter the behavior of individual law enforcement officers or the policies of their departments. One could argue that applying the exclusionary rule in cases where the police failed to demonstrate probable cause in the warrant application deters future inadequate presentations or "magistrate shopping" and thus promotes the ends of the Fourth Amendment. *Suppressing evidence obtained pursuant to a technically defective warrant supported by probable cause also might encourage officers to scrutinize more closely the form of the warrant and to point out suspected judicial errors. We find such arguments speculative and conclude that suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule.* 468 U.S. at 918, 104 S.Ct. at 3418 (emphasis added).

8. Petitioner bases much of his argument on *People v. McPhee*, 256 Ill.App.3d 102, 195 Ill.Dec. 59, 65, 628 N.E.2d 523, 529 (1993). In that case, the Illinois Appellate Court held the *Leon*

 exception inapplicable to the search of a home because the warrant at issue only authorized a search of "A Federal Express Overnight Letter, measuring approximately $8\frac{1}{2}'' \times 11''$, addressed to A. McPhee, Southside Paralegal 253 East 142nd St. Dolton, IL." *Id.* at 64–65, 628 N.E.2d at 528–29. However, we do not believe *McPhee* controls our case. First, we are not bound to follow state court interpretations of federal constitutional law. *Moses v. County of Kenosha*, 826 F.2d 708, 712 (7th Cir.1987). Second, the affidavit requesting a search warrant in *McPhee* did not indicate whether the house should be searched in addition to the Federal Express Envelope, nor did the warrant contain a detailed description of the property. Third, nowhere in *McPhee* did the court cite or discuss *Sheppard*, the case most analogous to the situation presented here. Consequently, we reject Petitioner's request to mechanically apply the holding of *McPhee* to this case.

9. Although the good-faith exceptions outlined in *Leon* and *Sheppard* do not necessarily delineate the scope of the Fourth Amendment—as distinguished from the contours of the exclusionary rule—we nonetheless believe that an objectively reasonable belief in the validity of a search is

lawful right of access" to any compartments that might contain the items listed in the warrant, *see United States v. Ross*, 456 U.S. 798, 820–21, 102 S.Ct. 2157, 2170–71, 72 L.Ed.2d 572 (1982), and therefore were entitled to search Kytka's bedroom.

Kytka's only substantial challenge, then, is to the second requirement—that the incriminating nature of the items was "immediately apparent." Petitioner argues that any incriminating characteristic of a safety deposit box key is not immediately apparent, and therefore the seizure of the five keys is not saved by the plain-view doctrine. We disagree. *United States v. Eschweiler*, 745 F.2d 435, 439–40 (7th Cir.1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1188, 84 L.Ed.2d 334 (1985), is instructive. In that case an FBI agent, while searching for cocaine and currency in a suspect's home pursuant to a warrant, reached into the pocket of an overcoat and pulled out an envelope containing a safety deposit box key. The envelope clearly indicated that it contained a safety deposit box key, and given that there was probable cause to search the house for cocaine and currency, "[t]he agent was entitled to infer that [the suspect] had a safe-deposit box that might well contain cocaine, money from selling cocaine, or both." *Id.* at 439. The court concluded that the seizure of the key was justified under the plain-view doctrine. *Id.* at 439–40.[10]

Similarly, the agents in this case were searching for cocaine, currency, and drug paraphernalia when they stumbled upon safety deposit box keys. However, rather than discovering just one envelope containing a single key, as was the case in *Eschweiler*, the agents at Kytka's house discovered a key ring with *five* safety deposit box keys. This fact alone makes the instant case more compelling than *Eschweiler*, since the presence of five safety deposit box keys on a single key ring is, to say the least, unusual. Given that Kytka had just accepted a package containing one kilogram of cocaine, agents were permitted to conclude from their discovery of the keys that he maintained numerous safety deposit boxes to secrete cocaine and cash proceeds from drug transactions. Because the incriminating nature of the five keys was immediately apparent, and the agents were lawfully entitled to search Kytka's home when they found them, Petitioner was not prejudiced by the failure of his attorneys to vigorously argue for the suppression of the keys and the $250,000.[11] Accordingly, we conclude that Kytka has failed to demonstrate that he was deprived of the assistance

sufficient to satisfy the first prong of the "plain-view" doctrine. A contrary rule would have little deterrent effect on law enforcement, since officers who possess a good-faith basis to believe that their intrusions are justified will also believe that they are entitled to seize patently incriminating evidence in their plain view. Thus, even though some articulations of the plain-view doctrine indicate that an officer must not have entered the house in violation of the Fourth Amendment, *e.g.*, *United States v. Willis*, 37 F.3d 313, 316 (7th Cir.1994), we hold that an officer's good-faith reasonable belief that he complied with the Fourth Amendment is all that is required, *United States v. Legg*, 18 F.3d 240, 243–44 & n. 2 (4th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 2761, 129 L.Ed.2d 876 (1994); *United States v. Morris*, 904 F.2d 518, 519 (9th Cir. 1990).

10. We note that the court in *Eschweiler* found additional evidence of the key's incriminating nature in the fact that agents did not recover from the house any of the $1250 in marked bills given to the defendant by a confidential informant for drug purchases. Thus, it was reasonable for the agents to believe that the currency

was being stored in the safe-deposit box. *Id.* at 439.

11. In any event, we do not believe that the presentation of this evidence rendered Kytka's trial fundamentally unfair or unreliable. To be sure, the trial judge did believe that the possession of $250,000 in cash constituted "[s]ignificant evidence" on the charge of possession with the intent to distribute. Resp.Ans., Ex. J, at 62–63. However, the court was clear to point out that "mere possession of money in and of itself is not particularly indicative of guilt." *Id.* at 63. In addition, the court also found as a "significant piece[ ] of evidence" the fact that Kytka was waiting for the package from Florida, and was at his house during the middle of the day to receive it. *Id.* at 62. Finally, when making its finding of guilt, the court relied on the totality of the evidence against Kytka: the possession of one kilogram of cocaine, cocaine processing equipment, glass vials, a handgun, and large amounts of cash (including the $5000 seized from his house). *Id.* at 64. In sum, there is not a reasonable probability that, had the $250,000 been suppressed, the verdict would have been different.

of counsel required by the Sixth Amendment.[12]

### III. Conclusion

For the reasons set forth above, Kytka's petition for a writ of habeas corpus is denied. It is so ordered.

---

12. Kytka also claims that appellate counsel was ineffective for failing to argue that his trial counsel performed below constitutional standards. Because none of trial counsel's alleged errors rose to the level of a constitutional deprivation, appellate counsel's failure to argue the ineffectiveness of trial counsel is not in itself an independent violation of the Sixth Amendment.