89 F.3d 836
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Barbara COPELAND, Defendant-Appellant.
 No. 95-5596.
 United States Court of Appeals, Sixth Circuit.
 June 6, 1996.
 
 1
 Before: NELSON and MOORE, Circuit Judges; and CLELAND, District Judge.*
 
 
 2
 CLELAND, District Judge.
 
 
 3
 We are presented in this case with a challenge to the manner in which a search warrant was executed. Appellant Barbara Copeland says that the manner was unreasonable given the general circumstances of the search, including time of day, but more specifically because the knock-and-announce requirement of the fourth amendment was substantially ignored by the executing officers. She suggests that the fruits of the search are inadmissible. The execution of the search warrant involved three plain-clothes officers forcing their way into the home of this solitary woman at about 3:00 in the morning, injuring the woman in the process. These core facts are, at the threshold, troubling. We are of the belief that this affair could have been handled with far greater sensitivity to the reaction likely to be felt by any citizen confronted at that hour by people invading a home. We must recognize, however, that the business of law enforcement is often imperfect. Upon careful review, we find that there are other important facts which place in context the manner of this warrant execution and which satisfactorily explain the officers' actions. The district court, adopting a magistrate judge's suggestions, held that the search was not unreasonable and that it was preceded by a suitable notice to the homeowner. We affirm the decision of the district court in rejecting Appellant's challenge to the warrant execution.
 
 I.
 
 4
 Appellant Copeland ("Copeland") was indicted on June 23, 1994, on one count of possessing cocaine with the intent to distribute and one count of carrying a firearm during and in relation to a drug trafficking offense.[2] On August 16, 1994, Copeland filed a Motion to Suppress Evidence, challenging the search. The Magistrate Judge issued a report and recommendation after a hearing and suggested that the search complied with the fourth amendment. The district court adopted the report and recommendation over Copeland's objections. Copeland thereafter entered a conditional guilty plea, reserving her right to challenge the search on appeal.
 
 II.
 
 5
 The legal conclusions of the district court are reviewed de novo. United States v. Radka, 904 F.2d 357, 361 (6th Cir.1990). Factual findings of the district court in deciding a motion to suppress in a criminal case are reviewable under the clearly erroneous standard. United States v. Coleman, 628 F.2d 961, 963 (6th Cir.1980).
 
 III.
 
 6
 The district court found following facts. On March 26, 1994, Tennessee Bureau of Investigation ("T.B.I.") Agent Max Smith obtained a state search warrant for Copeland's home. Smith, along with Joanne Shuler, another T.B.I. Agent, and Maurice Shultz, a local law enforcement officer, began surveillance of the house at about 8:00 p.m. Smith had received the search warrant on the strength of information from a confidential informant who had made several purchases of narcotics from Copeland. The informant had told Smith that Copeland often retrieved drugs for distribution from where they were hidden in her brassiere. Officer Schultz testified that the confidential informant had provided reliable information in the past to law enforcement. The officers watched the Copeland home from 8:00 p.m. until 1:00 a.m., but no one appeared to be inside during that time. They called off the surveillance around 1:15 a.m. and met briefly. When Agent Smith drove past Copeland's home on his way home several minutes later, he noticed that her car was there and the lights were now on. He immediately contacted Shuler and Shultz. They met back at Copeland's home at approximately 2:30 a.m. with a plan involving a ruse: Shuler was to knock on Copeland's door, pretending that she needed to use a telephone because of car trouble. Shultz and Smith would hide near the door, and would announce their presence when Copeland was at the door and in their sight, thus lessening the chance that she could dispose of any drugs she might have on her person.
 
 
 7
 Shuler approached and found Copeland's storm door locked; the inside door, however, was open so Shuler could see inside. When Copeland came to the door, Shuler asked to use the phone, but Copeland simply asked what number Shuler wanted to be dialed. Shuler, unsure of the local phone exchange, gave Copeland a number which would have been long distance from that location and Copeland told her to try somewhere else, such as across the street. At that point, Shultz and Smith thought that Copeland was becoming suspicious and they emerged from their hidden positions. They began to approach the front door, with police badges displayed, in order to detain Copeland and prevent her from shutting the door. Shultz and Smith identified themselves and Shultz yelled "Police, search warrant." While Copeland began to try to shut the inner door, Shultz was trying to open the storm door. In his efforts, he broke off a portion of the door, dropped it, and then kicked the door's window. He thought it was a plastic material, but it was in fact glass which immediately shattered under the force of the blow. With that kick he hit the inner door and that inner door hit Copeland. Approximately five seconds had elapsed between the officers' first announcement and the time the storm door was kicked in. Once they were inside the house, they administered first aid to Copeland, who was cut, and explained that they had a search warrant. The officers found cocaine and a pistol in a dresser in her bedroom.
 
 IV.
 
 8
 Copeland advances two closely-related arguments in support of her appeal from the decision by the district court refusing to suppress evidence from the search of her home. She claims, firstly, that the search execution was unconstitutionally unreasonable in the general sense of the word. Secondly, she says that the search execution was unconstitutionally unreasonable specifically because the officers failed to knock-and-announce their presence.
 
 
 9
 A. The district court determined that the search was, on the whole, "reasonable" given the circumstances. This legal conclusion is subject to de novo review. Copeland's primary argument in support of her appeal on this issue is that she acted understandably, i.e., "reasonably," given the circumstances. Perhaps this is true; however, even if it is, the reasonableness of her actions is not directly dispositive of the analysis. The inquiry focuses upon the reasonableness of the search. As the Seventh Circuit has stated: "The Fourth Amendment does not require officers to use the least intrusive or even less intrusive alternatives in search and seizure cases. The only test is whether what the police officers actually did was reasonable." Plakas v. Drinski, 19 F.3d 1143, 1149 (7th Cir.1994) (citing, inter alia, Illinois v. Lafayette, 462 U.S. 640, 647 (1983)). See generally Schulz v. Long, 44 F.3d 643, 648-49 (8th Cir.1995) (holding that when examining whether conduct during seizure is proper, courts must take into account the information possessed by officer and determine if conduct falls within range of objectively reasonable actions).
 
 
 10
 Copeland notes, correctly, that we have stated that "the focus 'is properly not on what "magic words" are spoken by the police, but rather on how these words and other actions of the police will be perceived by the occupant....' " United States v. Finch, 998 F.2d 349, 354 (6th Cir.1993) (quoting United States v. One Parcel of Real Property, 873 F.2d 7, 9 (1st Cir.), cert. denied sub nom, Latraverse v. United States, 493 U.S. 891 (1989)). Copeland relies upon our statement in Finch in support of her argument that these warrant-executing officers should have been constrained to act in a manner that took into account the reasonably expected reaction of this particular household occupant at that particular time. Specifically, Copeland contends that the officers should have recognized that their ruse would cause her to become fearful and that her fear would be reasonably grounded. Although this argument holds some surface attraction, we believe that it is in reality based upon a misreading of Finch, a case which dealt with the court's determination that a relatively simple announcement by the police was objectively sufficient to alert occupants to police presence and purpose.
 
 
 11
 In Finch, the police executed a search warrant at the defendant's residence while his mother and girlfriend were at home. An officer knocked on the front door and yelled "police." After waiting five to ten seconds, and hearing no response, the police entered the residence forcibly in order to prevent evidence destruction. At issue was whether the officers had fulfilled the knock-and-announce requirement before entering. We found that the officers had fulfilled this requirement, even though no officer had announced that they were at the residence to execute a search warrant. In so holding, we reasoned that the residents knew enough about the reason for the police presence--that the police sought entry to search or to arrest--when the police pounded on the door and yelled "police." Finch, 998 F.2d at 354 ("In our view, the identification of themselves as police and giving the occupants a reasonable time to respond are far more constitutionally significant than stating their purpose in demanding entry,....").
 
 
 12
 We decline Copeland's invitation to invert the meaning of Finch to apply to this case. Rather, we conclude that the district court in its findings correctly considered testimony such as the professed reaction of Copeland in rendering its decision that the search was reasonable.
 
 
 13
 A part of Copeland's assertion in this issue relates to the officers' use of a ruse in approaching the door, and she seems to suggest that, in and of itself, the use of such a ruse converts what would be reasonable into something constitutionally unreasonable. There is no support for this proposition, and we do not accept it. The use of subterfuge in law enforcement activities has long been recognized by the Supreme Court, which in the context of undercover operations has stated that "the Government is entitled to use decoys and to conceal the identity of its agents. The Bill of Rights, of course, provide [sic] checks upon such official deception for the protection of the individual." Lewis v. United States, 385 U.S. 206, 209 (1966). In Lewis, the Supreme Court held that the fact that the resident invited the undercover agent, without knowing that he was a government agent, to his home to purchase drugs was irrelevant in determining that he gave his consent to enter voluntarily. Id. at 210. Therefore, even if consent is obtained by deceit, courts will still, in most circumstances, find consent freely given.[3]
 
 
 14
 We suspect that it may often be the case in search warrant executions that the safety of officers and citizens alike can be enhanced if the home's occupants are brought into the open--even, if needs be, by the use of subterfuge. In some cases, officers may encounter the need to disarm occupants or, as in this case, prevent evidence destruction. At a minimum, there is a need by officers to account for all occupants and to inform them of the impending intrusion. Many proper and beneficial purposes may be served by techniques which include a ruse. The enforcement of our criminal laws, certainly, must be done within constitutional bounds, but is not a sporting contest in which officers must obey "no-bluff" rules; the use of such a technique in this case is of no constitutional significance standing alone.
 
 
 15
 Copeland argues, secondarily on this point, that the district court's factual findings regarding her ability to identify the officers were clearly erroneous. Copeland fails, however, to point to anything in the record that contradicts the district court's factual findings, which we can reverse only if clearly erroneous. In fact, the record supports the factual findings made by the lower court. The officers announced their authority before attempting to force their way into Copeland's home, and both Smith and Shultz were wearing badges. Copeland testified otherwise: she said that she did not hear any announcement and that she was screaming as she was trying to shut the door. Even if it were true that she did not hear the officers announce their identity, that fact is not necessarily inconsistent with the officers' testimony that they did announce their authority. Therefore, the district court's factual conclusion that the officers announced themselves and their purpose is not clearly erroneous.
 
 
 16
 Accepting the factual findings of the lower court, we too find that the search by the officers was objectively reasonable. The officers attempted to use subterfuge to gain entry to the home because they did not want Copeland to be aware of their purpose before she was within their sight and grasp. Given the confidential informant's reliable knowledge that Copeland routinely hid drugs where she would have easy access for a quick disposal, the officers' attempt to prevent Copeland from seizing such an opportunity was reasonable. Nothing more is required under the fourth amendment and Copeland's arguments on this issue fail to convince.
 
 
 17
 B. The second issue on appeal, the predicates and implications of which are thoroughly intertwined with the first, is Copeland's challenge to the district court's determination that the officers fulfilled the knock-and-announce requirement under the fourth amendment.[4] The district court found that the officers "gave notice of their identity as police and that they were there to execute a search warrant before the defendant tried to close the inner door. This attempt to bar the officers from entrance was what precipitated the forced entry." The district court further found that, although Copeland may not have heard the officers announcing themselves and their purpose, she could have seen Shultz's clearly displayed badge.
 
 
 18
 These factual findings of the district court can be reversed by this court only if they are clearly erroneous. In fact, these findings are supported by the record, which includes the testimony of each officer from a hearing on the motion to suppress. We note, in so holding, that Copeland testified that she did not know the officers' identity and purpose, saying that she was screaming at the time she was trying to shut the door. We also know that Smith's testimony could be interpreted to say that Copeland began to shut the inside door before the announcement of identity and purpose. These things, however, are insufficient to overcome the hurdle imposed by the standard of review. Even these portions of testimony could have been construed by the district court as revealing an attempt by Copeland to bar entry. Because the district court's findings of fact find support in the record, they are not clearly erroneous, and shall be upheld.[5]
 
 
 19
 The district court concluded, based upon these facts, that a sufficient foundation existed to permit forcible entry into Copeland's home. This is a legal conclusion subject to de novo review by this court. Title 18 U.S.C. § 3109 defines the manner in which federal officers may search a private residence. The statute reads:
 
 
 20
 The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of a warrant.
 
 
 21
 We have noted that this statute has been incorporated into the fourth amendment. "[T]he fourth amendment forbids the unannounced, forcible entry of a dwelling in the absence of exigent circumstances." United States v. Francis, 646 F.2d 251, 257-58 (6th Cir.), cert. denied, 454 U.S. 1082 (1981).
 
 
 22
 We agree with the district court, as noted above, that the officers did in fact fulfill the knock-and-announce requirement. We also find that there is clear evidence from which the officers could objectively and reasonably believe that Copeland's reaction to their notice--to shut the door--was a refusal to admit them into her home. That Copeland refused entry to the officers, after notice by them, is sufficient under the law to permit the officers to effect a forced entry. See, United States v. Nabors, 901 F.2d 1351, 1354 (6th Cir.), cert. denied, 498 U.S. 871 (1990); United States v. Kennedy, 32 F.3d 876 (4th Cir.1994), cert. denied, 115 S.Ct. 939 (1995).
 
 V.
 
 23
 In affirming the manner of this search, we decide only that it did not fall below the minimum standards of reasonableness imposed by the fourth amendment. We do not mean to say that we are favorably impressed by the practice of allowing plain clothes officers to execute a residential search warrant in the early hours of the morning. In fact, it strikes us as a practice which is inadvisable and highly dangerous to both officers and citizens. There may come a case in the future in which, with other facts and circumstances, the absence of uniforms tips the scales and persuades a court that the manner of warrant execution too closely resembled a burglary cum assault, and is therefore constitutionally unreasonable. We offer this obiter dictum while fully aware that the original police plan called for a search to have been done as early as 8:00 p.m. We also know, though, that the decision to regroup and "bluff" was made much later, between 1:30 a.m. and 2:30 a.m. The record and arguments of counsel unfortunately leave unanswered our question about the feasibility of deploying uniformed officers to assist in the search and thus to provide--for the homeowner as well as for whomever might have been watching the situation unfold--an important symbolic reassurance of legitimacy.
 
 VI.
 
 24
 We AFFIRM the district court's denial of Copeland's motion to suppress, VACATE Copeland's conviction under 18 § 924(c)(1), and must therefore REMAND to the district court for consideration of resentencing on the remaining conviction.
 
 
 25
 MOORE, Circuit Judge, concurring.
 
 
 26
 I concur in the majority opinion but write separately to note that it is a close question whether the officers in this case complied with knock-and-announce principles. However, any noncompliance with knock-and-announce principles here would be excused by the presence of exigent circumstances because the officers had information upon which they could base a reasonable belief that Copeland carried drugs on her person within easy reach for disposal. This information, coupled with the fact that Copeland was attempting to shut her door, presented sufficient exigent circumstances to justify the forcible entry that occurred.
 
 
 
 *
 The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [2]
 Copeland asserts, and the government agrees, that regardless of the determination of the search warrant claims the firearm count must be vacated and the case remanded for resentencing in the wake of Bailey v. United States, --- U.S. ----, 116 S.Ct. 501 (1995). Defendant was sentenced without the firearm enhancement noted in United States Sentencing Guidelines § 2D1.1(b)(1), which provides for a two-level enhancement. This score enhancement was originally inappropriate since a conviction was entered under § 924(c). See U.S.S.G. § 2K2.4, comment. (n. 2). Had such an enhancement been added to the offense level where Copeland was also sentenced under a § 924(c) conviction, the enhancement would have constituted double counting. However, if Copeland had not been convicted under § 924(c), the district court could have, if it decided to so exercise its discretion, increased the drug possession offense level based on the firearm possession. Because the sentences on the two convictions were interdependent, it is within our power to remand to the district court for resentencing upon vacating the firearm conviction. See United States v. Lang, --- F.3d ----, 1996 WL 174784, * 7 (10th Cir.1996); United States v. Fennell, 77 F.3d 510, 510-11 (D.C.Cir.1996) (per curiam); United States v. Roulette, 75 F.3d 418, 426 (8th Cir.1996)
 
 
 [3]
 We note, however, that a scheme may not be constitutionally proper in every case. Where, for example, the effect of the ruse is to convince the resident that he or she has no choice but to invite the undercover officer in, the ruse may not pass constitutional muster. Accordingly, the voluntary nature of the consent is essential. See, e.g., State v. Petersen, 604 P.2d 267 (Ariz.1979) (search violated Fourth Amendment where police gained access to car by telling owner that officer had to retrieve something he had hidden in car, unbeknownst to previous owner); People v. Jefferson, 43 A.D.2d 112, 350 N.Y.S.2d 3 (1973) (consent not voluntary and search violative of Fourth Amendment where officers obtained entry by saying that they were investigating gas leak). In this case, Copeland obviously had a choice whether or not to consent to Shuler's entry, and she exercised that choice by denying entry
 
 
 [4]
 The knock and announce requirement is an element of the fourth amendment reasonableness inquiry. Wilson v. Arkansas, --- U.S. ----, 115 S.Ct. 1914, 1918 (1995) ("Given the longstanding common-law endorsement of the practice of announcement, we have little doubt that the Framers of the Fourth Amendment thought that the method of an officer's entry into a dwelling was among the factors to be considered in assessing the reasonableness of a search or seizure.")
 
 
 [5]
 It appears that the district court did not fully credit Copeland's testimony about screaming; such was not entirely consistent with the officers' testimony. However, the court appears to have delivered an opinion which would hold the search reasonable even if the Copeland testimony were fully credited