**NOT RECOMMENDED FOR PUBLICATION**
File Name: 12a0063n.06

**No. 11-5502**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellee, | ) | **Jan 17, 2012** |
| | ) | LEONARD GREEN, Clerk |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| MICHAEL GREGORY, | ) | KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | |

Before: SILER, McKEAGUE, and STRANCH, Circuit Judges.

**SILER**, Circuit Judge. Defendant Michael Gregory pled guilty to possessing a firearm while subject to a domestic violence protection order in violation of 18 U.S.C. § 922(g)(8), reserving the right to appeal the district court's denial of his motion to suppress. Gregory claims that a ruse employed by police officers violated his rights under the Fourth Amendment. He also argues that his Sixth Amendment rights were violated when the officers failed to notify Gregory's counsel before questioning him. For the reasons stated below, we **AFFIRM** the district court's denial of Gregory's motion to suppress.

**I.**

In 2009, Detective Joshua Bunch, an arson investigator with the Kentucky State Police, called Gregory at his place of business, Gregory's Auto Sales. Gregory's residence had incurred fire damage, and Bunch was investigating possible arson. Bunch asked Gregory to accompany him to

Gregory's residence, explaining that the surveillance system needed to be examined. In fact, this request was a ruse to coordinate a meeting between Gregory, Special Agent Vince Kersey of the Drug Enforcement Agency ("DEA"), and Detective Sam Johnson of Operation UNITE. Kersey and Johnson hoped to interview Gregory regarding an ongoing drug investigation and possibly obtain his cooperation as an informant.

Gregory stated that he would drive separately and meet Bunch at the burned residence, but Bunch pulled into the parking lot at Gregory's Auto Sales and asked Gregory to ride with him. Gregory agreed to ride with Bunch on the four-mile drive to Gregory's residence.

Kersey and Johnson arrived at the residence soon after Gregory and Bunch. Kersey identified himself as a DEA agent and informed Gregory that he was not under arrest. Gregory already knew Johnson. Although the exact account is disputed, at some point Gregory indicated that he was carrying a firearm. Kersey was aware that Gregory was subject to an active domestic violence order and confiscated the weapon.

Bunch subsequently left, leaving Kersey, Johnson, and Gregory in Kersey's vehicle. Gregory informed Kersey and Johnson that he had been arrested on drug charges in Texas and that he was represented by counsel in that matter, but Kersey explained that they were only interested in another specific drug operation. The officers did not question Gregory about his Texas arrest or about the firearm they had seized. When the discussion ended after thirty minutes, the officers left and Gregory used his cell phone to get a ride back from his burned residence.

Gregory was later indicted for possession of a firearm while subject to a domestic violence protection order in violation of 18 U.S.C. § 922(g)(8). He filed a motion to suppress, arguing that the officers' ruse and the weapon seizure constituted an unreasonable search and seizure under the

Fourth Amendment. After an evidentiary hearing, the district court denied Gregory's motion to suppress. Gregory then pled guilty, reserving his right to appeal the district court's denial of his motion.

**II.**

"This court reviews the district court's factual findings in a suppression hearing under the clearly erroneous standard and the district court's conclusions of law *de novo*." *United States v. Avery*, 137 F.3d 343, 348 (6th Cir. 1997).

**III.**

Gregory claims that all the evidence should be suppressed in this case under the Fourth Amendment. First, he argues that he was illegally seized when he rode in Bunch's vehicle to his burned residence. Second, he argues that even if this encounter is found to be consensual, the consent is negated by the use of the ruse to trick him into joining Bunch. Finally, Gregory argues that he was illegally searched when Kersey allegedly asked if he had any weapons and subsequently confiscated the firearm.

### A. Ride with Detective Bunch

Because consensual encounters are not covered by the Fourth Amendment's protections, the first question in this case is whether Gregory's accompanying Bunch in Bunch's vehicle should be characterized as a seizure under the Fourth Amendment or a consensual encounter. *See Avery*, 137 at 352 ("The consensual encounter, however, is not a seizure and hence not governed by the Fourth Amendment."). The voluntariness of consent in any case "is determined by examining the totality of the circumstances." *United States v. McCauley*, 548 F.3d 440, 446 (6th Cir. 2008) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973)).

The "totality of the circumstances" here demonstrate that Gregory's freedom of movement was not restrained and he was not seized. *See id.* As explained above, Bunch arrived at Gregory's business while the two were speaking on the phone and requested that Gregory ride with him to Gregory's residence. Bunch was not wearing his uniform, did not wield his weapon, and did not engage in any threatening behavior at all. The district court specifically found that Bunch did not "order" Gregory into the car, a finding that is consistent with the record and certainly not "clearly erroneous." *See Avery*, 137 F.3d at 348. In fact, the reason Bunch was asked to set up the ultimate meeting in this case was because of the relationship and rapport he had built with Gregory over the course of the arson investigation.

These facts differ significantly from those present in *United States v. Ceballos*, 812 F.2d 42 (2d Cir. 1987), where the court found that a "request" to accompany officers to the police station constituted a seizure. The court there found that "a request to appear at a police station may easily carry an implication of obligation" and that "a reasonable person would have felt obligated to accompany the agents immediately . . . when they refused [defendant's] request to follow them in a vehicle [the defendant] was authorized to drive." *Id.* at 48 (internal quotation marks omitted). Although Gregory did offer to drive his own vehicle, this case is readily distinguishable from *Ceballos*. Bunch arrived by himself in street clothes and an unmarked car, and he did not use any "language or tone of voice indicating that compliance with [his] request might be compelled." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). Most importantly, Bunch requested that Gregory accompany him to Gregory's own property, a request that is far less threatening than an

urgent request to accompany four officers to the police station. The facts in this case demonstrate a non-confrontational, consensual encounter between Bunch and Gregory.

### B. The Officers' Ruse

Because the initial encounter between Bunch and Gregory was consensual, the question then becomes whether the consent was negated by the officers' use of a ruse. In some instances, a ruse or trick by the police can undermine an otherwise consensual encounter. *See, e.g., United States v. Hardin*, 539 F.3d 404, 424-27 (6th Cir. 2008) (finding a Fourth Amendment violation where apartment manager, at direction of police, carried out a ruse involving a water leak prior to officers' serving arrest warrant).

Importantly, the question is not whether Gregory may have declined Bunch's request had he known the officer's true motivation. Rather, the question under the Fourth Amendment is whether the "'police misrepresentation of purpose [was] so extreme that it deprive[d] the individual of the ability to make a fair assessment of the need to surrender his privacy.'" *Hardin*, 539 F.3d at 425 (quoting 2 Wayne R. LaFave et al., *Criminal Procedure* § 3.10(c) (3d ed. 2007)). Essentially, the question this court must ask is whether the ruse created a scenario where Gregory "ha[d] no choice" but to concede his privacy interests. *Id.* (quoting *United States v. Copeland*, No. 95-5596, 1996 WL 306556, *3 n.3 (6th Cir. June 6, 1996)). The *Hardin* court concluded that "the ruse regarding the water leak presented a situation in which an individual would feel 'no choice but to invite the undercover officer in' and any consent was invalid." *Id.* (quoting *Copeland*, 1996 WL 306556 at *3 n.3).

This case does not present the type of situation addressed in *Hardin*. Although Gregory believed that he would be traveling to his residence to examine evidence in the arson investigation,

rather than meet with other officers concerning an ongoing drug case, he was fully aware that he would be accompanying a law enforcement officer. By contrast, in *Hardin*, the defendant believed he was interacting simply with an apartment manager, not a government agent. Moreover, the water leak ruse in *Hardin* undoubtedly created a sense of urgency and compulsion for the defendant who was residing in the apartment. Despite the ruse in this case, Gregory maintained "the ability to make a fair assessment of the need to surrender his privacy." *Id.* at 425.

### C. Firearm Seizure

Finally, Gregory claims that, even if the entire encounter was consensual, he was illegally searched when Kersey allegedly asked if he had any weapons and subsequently confiscated the firearm Gregory was carrying in his jacket.[1] At the outset, it is important to note that this encounter remained consensual when Bunch and Gregory arrived at the residence and were joined by Kersey and Johnson. At this point, Gregory learned of the ruse and was told the true reason for the meeting. Although Gregory's freedom of movement was in some sense limited, as he was at his isolated residence without his own vehicle, he was not physically restrained, and the officers did not use any physical force or engage in any threatening or intimidating behavior. Because of the cold weather, the three men sat in Kersey's vehicle to discuss the investigation, with Gregory sitting in the front passenger seat. By all accounts, the encounter and discussion between Gregory and the two officers was non-confrontational and non-hostile.

---

[1]The government argues in its brief that Gregory has waived this claim by failing to develop an argument. *See United States v. Johnson*, 440 F.3d 832, 846 (6th Cir. 2006). While Gregory's argument on this specific point is rather perfunctory, the claim can still be quickly addressed on the merits.

There are differing accounts of the events leading to the confiscation of Gregory's firearm. Gregory claims that Kersey initiated the search by "ask[ing] [him] if [he] had anything on his persons [sic] that would . . . be harmful or violent," while Kersey suggested that Gregory volunteered the information that he was carrying a firearm without any prompting from the officers. Significantly, Gregory does not claim that Kersey simply frisked him and found the gun. Even assuming that Gregory's account is true, his Fourth Amendment rights were not violated.

During a consensual encounter like this one, "law enforcement officers may . . . ask general questions without having any reasonable suspicion of criminal activity, so long as the officers refrain from the type of intimidating behavior that would lead a reasonable person to believe that the person was not free to leave." *United States v. Waldon*, 206 F.3d 597, 603 (6th Cir. 2000). When Kersey asked Gregory if he was carrying a weapon, that question did "not transform the [consensual encounter] into a seizure." *Mitchell v. United States*, 233 F. App'x 547, 550 (6th Cir. 2007). Gregory voluntarily answered this question in the affirmative, at which point Kersey, who was aware of the active domestic violence order against Gregory, had a "reasonable, articulable suspicion" that Gregory unlawfully possessed a firearm in his jacket. *Avery*, 137 F.3d at 352. Kersey was then entitled to search Gregory and confiscate the illegally held weapon. Therefore, Gregory's Fourth Amendment rights were not violated.

**IV.**

Prior to this incident, Gregory had retained counsel regarding drug charges in Texas. Here, Gregory summarily claims that the officers violated his Sixth Amendment rights by failing to notify his counsel before questioning him. Gregory has waived any argument under the Sixth Amendment for two reasons. First, the argument has been waived because Gregory failed to raise the issue with

the district court. *United States v. Bonds*, 12 F.3d 540, 569 (6th Cir. 1993) (holding that defendant waived argument by failing to raise it in suppression hearing).

Second, it has been waived because he failed to develop it in his brief. *See Johnson*, 440 F.3d at 846 ("'[I]t is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" (quoting *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)). Gregory does not devote any argument headings to this issue, does not cite any caselaw, and in fact does not develop the argument at all.

Finally, even if it was not waived, Gregory's Sixth Amendment claim lacks merit. All evidence suggests that the officers were not interested in the Texas matter and did not question Gregory about it. Even if Gregory's Sixth Amendment claim has not been waived, his rights were not violated by the officers' questioning.

**AFFIRMED.**