**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Ronald FINCH, Defendant–Appellant.**

No. 92–5942.

United States Court of Appeals,
Sixth Circuit.

Argued March 2, 1993.

Decided July 6, 1993.

Daniel A. Clancy, U.S. Atty., Timothy R. DiScenza, Asst. U.S. Atty., Christopher E. Cotten, Asst. U.S. Atty. (argued and briefed), Memphis, TN, for plaintiff-appellee.

Gerald S. Green (briefed), Wayne Emmons (argued and briefed), Memphis, TN, for defendant-appellant.

Before: KEITH and BATCHELDER, Circuit Judges, and CHURCHILL, Senior District Judge.*

* The Honorable James P. Churchill, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

CHURCHILL, Senior District Judge.

On January 19, 1992, officers of the Memphis, Tennessee Police Department raided the residence of Ronald Finch under the authority of a search warrant to search for cocaine. The warrant was issued by a judge of the General Sessions Court. Finch, his mother and girlfriend were on the premises at the time of the entry. After entering the house but before searching it, they interrogated Finch. In response to the interrogation, Finch showed the police two locations on the premises where cocaine could be found. The cocaine was seized and Finch was arrested forthwith.

Memphis authorities sought a federal prosecution of Finch because federal sentences were potentially greater. A two-count indictment was returned in the Western District of Tennessee charging Finch with possession with intent to distribute 37 and 56 grams of cocaine, respectively. Following a testimonial hearing, Finch's motion to suppress the evidence seized during the raid was denied.

Finch entered a conditional plea of guilty to each count, reserving the right to appeal the denial of his motion to suppress pursuant to Rule 11(a)(2), Fed.R.Crim.P. On June 1, 1992, he was sentenced to a term of 63 months and this appeal ensued.

Finch's appeal raises the following issues:

(1) Whether the search warrant was invalid because it was issued by a General Sessions Court judge who was not a judge of a "court of record." This issue is raised for the first time on appeal.

(2) Whether the affidavit for the search warrant was insufficient to support a finding of probable cause.

(3) Whether the search warrant was invalid because of purposefully omitted facts which would have cast doubt on the existence of probable cause.

(4) Whether the evidence seized during the raid should be suppressed because

the police did not announce their purpose when demanding entry.

(5) Whether statements and evidence must be suppressed because they were obtained from Finch by unlawful threats and intimidation.

The record on appeal also suggests that the police forced entry into a private residence without giving the occupants a reasonable opportunity to open the door.

## I.

▇ The search warrant was issued by William Hackett, Judge of Division 1, General Sessions, Shelby County, Tennessee. Rule 41(a) of the Tennessee Rules of Criminal Procedure provides that "magistrates" may issue search warrants. Section 40–5–102, Tennessee Code Annotated, provides that judges of the courts of general sessions are magistrates. Rule 41(a) of the Federal Rules of Criminal Procedure requires that search warrants issued upon the request of a federal law enforcement officer or an attorney for the government may be issued by state courts of record. The appellant asserts that Judge Hackett is not a judge of a court of record. He then argues that the Federal Rules of Criminal Procedure should be used to test the authority of Judge Hackett to issue the search warrant in this case because it was used in a federal prosecution. This issue was not raised in the trial court below.

We need not determine whether there was plain error because there was no error. The search was conducted by state police officers pursuant to a state search warrant. In order to have been validly issued it must pass constitutional muster. The constitutional test for issuance of a search warrant is that it be issued by a neutral and detached magistrate. *Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948). There is nothing in the record to suggest that Judge Hackett did not meet this standard. It is immaterial whether his division of the Court of General Sessions is a court of record.[1]

---

1. If a search warrant was issued by a magistrate who did not meet the constitutional standard, it is doubtful if this would invalidate the search. The issue would more likely turn on the good

faith of the police in relying on the warrant. *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

## II.

The appellant contends that the search warrant affidavit was conclusory in nature and did not state probable cause for issuance of the warrant.

In the search warrant affidavit in this case, the affiant averred as follows:

[A]ffiant has talked with a reliable informant of Memphis, Shelby County, Tennessee who has given the affiant other information in the past which has been found to be true and correct, and which has resulted in several narcotic arrests and drug seizures. This reliable informant stated that within the past five (5) days of January 19, 1991, this reliable informant has been inside the above described residence and has seen the above described person storing and selling Cocaine inside this residence.

The appellant first argues that this affidavit failed to state probable cause to search in that there was nothing to indicate to the issuing judge that the substance the informant had seen in the defendant's residence was cocaine.

Probable cause for the issuance of a search warrant is defined in terms of whether the affidavit sets out facts and circumstances which indicate "a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Bowling,* 900 F.2d 926, 930 (6th Cir.), *cert. denied,* 498 U.S. 837, 111 S.Ct. 109, 112 L.Ed.2d 79 (1990), quoting, *United States v. Algie,* 721 F.2d 1039, 1041 (6th Cir.1983). In reviewing whether such a probability existed, courts should examine the totality of the circumstances. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). A magistrate's probable cause determination should be made in "realistic and commonsense fashion," and reviewed in the same manner. *Algie,* 721 F.2d at 1041. Moreover, any review of that determination should be undertaken using a "deferential standard." *Bowling, supra,* 900 F.2d at 930. It should be reversed only if the issuing magistrate's discretion was arbitrarily exercised. *United States v. Swihart,* 554 F.2d 264, 267–68 (6th Cir.1977).

Applying this standard to the affidavit in this case, the fair probability required to validate the warrant has been established. The affidavit states that the informant had given information resulting in drug arrests and seizures in the past. A magistrate examining this information in the required commonsense fashion could readily conclude that the informant was familiar with the appearance of controlled substances such as cocaine, and could identify them by observation.

The appellant nonetheless argues that the affidavit was conclusory in nature. However, this Court has defined a conclusory affidavit as one which states "only the affiant's belief that probable cause existed." *United States v. Ciammitti,* 720 F.2d 927, 932 (6th Cir. 1983), *cert. denied,* 466 U.S. 970, 104 S.Ct. 2342, 80 L.Ed.2d 816 (1984). The affidavit in this case provides a statement of the affiants' reasons for their belief as to the existence of probable cause.

Because the totality of the circumstances in this case would indicate to a neutral and detached magistrate that cocaine was being stored in the appellant's residence, the affidavit stated probable cause to search.

## III.

The appellant testified that on January 18, 1991, the day before the search warrant was issued, he was searched by police who were looking for drugs. He testified that one of the officers involved in the search looked like Officer Ballard, who was one of the persons who signed the affidavit for a search warrant, and that the information concerning the fruitless search should have been disclosed to the magistrate. Officer Ballard testified that he was not a participant in a search of Finch on January 18 and had no knowledge that such a search occurred. The District Court found that Finch failed to prove that Officer Ballard had knowledge of the January 18 incident, if it occurred, and there was no basis for invalidating the warrant.

We find no error in this conclusion.

## IV.

### Entry Under the Search Warrant

■ Most reported federal search warrant cases involve warrants issued by federal judicial officers. Frequently, the focus of these cases is on compliance with 18 U.S.C. § 3109 which reads as follows:

The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

Section 3109 has been described as a codification of the common law. *See, e.g., Sabbath v. United States,* 391 U.S. 585, 589, 591 n. 8, 88 S.Ct. 1755, 1757, 1759 n. 8, 20 L.Ed.2d 828 (1968) and *Rodriguez v. Jones,* 473 F.2d 599, 607 (5th Cir.), *cert. denied,* 412 U.S. 953, 93 S.Ct. 3023, 37 L.Ed.2d 1007 (1973). Actually, it is more than a codification of the common law. If one reads into it certain developing exceptions, it is a definition of the manner of search of a private residence that is reasonable under the Fourth Amendment. *United States v. Francis,* 646 F.2d 251 (6th Cir.), *cert. denied,* 454 U.S. 1082, 102 S.Ct. 637, 70 L.Ed.2d 616 (1981). In *Francis,* we noted:

Although the Supreme Court has not addressed the issue many federal courts have, including this Circuit. In some cases the discussion is dictum. In others, the opinion relies on Justice Brennan's dissent in *Ker,* [*Ker v. California,* 374 U.S. 23[, 83 S.Ct. 1623, 10 L.Ed.2d 726] (1963) ] which the Supreme Court itself has never adopted. Though each case by itself is less than compelling, their conclusion has been unanimous: the fourth amendment forbids the unannounced, forcible entry of a dwelling in the absence of exigent circumstances.

\* \* \* \* \* \*

Even Justice Brennan's dissent in *Ker* recognized exceptions to the constitutional rule in the case of entry into a dwelling where: (1) the persons within already know of the officers' authority and purpose; (2) the officers have a justified belief that someone within is in imminent peril of bodily harm; or (3) the officers have a justified belief that those within are aware of their presence and are engaged in escape or the destruction of evidence.

*Francis,* 646 F.2d at 257–58 (footnote omitted).

The constitutional rights of occupants of private residences do not depend on whether the officers executing a warrant are federal, state or local officers or whether the warrant was issued by federal or state judicial officers.

The District Court made the following findings of fact concerning this issue.

This search warrant was signed on January 19, 1991. That same day, Officers Ballard and Buck, accompanied by other officers, proceed to 1009 Semmes in Memphis, Tennessee, to execute the warrant. Officer Huff knocked on the front door and yelled, "police." After waiting an estimated five to ten seconds, one of the officers forced entry.

Upon entering the house, the officers discovered the defendant's mother, Mrs. Maple Finch, close enough to the door to hear the officers knock and yell. The defendant was discovered, along with a female companion, in a bedroom at the rear of the house.

The District Court's finding is based upon the testimony of Officer Ballard. Officer Ballard expressed the opinion that the five-to ten-second time span gave somebody inside a reasonable time to come to the door. When asked for his best estimate as to the time from yelling and knocking to until the time of forcing entry he testified: "I'd say five, ten seconds. If you give them much longer than that, if they got it, it's going to be flushed."

At the conclusion of the testimonial hearing, the District Court invited counsel to submit proposed findings of fact and conclusions of law. The proposed findings submitted by the government on this issue states, "One of the officers knocked on the front door and yelled 'police.' Upon receiving no answer, the officers forced entry."

Defense counsel filed another brief, but did not comply with the court's request for proposed findings.

If the manner of entry failed to satisfy constitutional standards, it was because the police failed to announce that they had a search warrant or because they did not give the occupants a reasonable period of time to open the door and avoid forced entry.

### A. *Failure to announce their authority and purpose*

■ Section 3109 requires officers to announce their authority and purpose, as does Rule 41(e), Tenn.R.Crim.P. The rule, however expressed, is not new.

The requirement of notice has been traced back as far as the decision in *Semayne's Case* [5 Coke 91, 77 Eng.Rep. 194 (K.B. 1603) ] in 1603, where the court asserted: "In all cases when the King is a party, the sheriff (if the doors be not open) may break the party's house, either to arrest him, or to do execution of the King's process, if otherwise he cannot enter. But before he breaks it, he ought to signify the cause of his coming, and to make request to open the doors."

2 Wayne R. LaFave, *Search and Seizure,* § 4.8(a) (2d ed. 1987).

In the best of worlds, compliance with the rule includes informing occupants that they are the police and that they demand entry because they have a search warrant.

■ Nothing in the record in this case suggests that the police referred to a search warrant before breaking in the outside door.

The appellant raised the issue in his motion to suppress the cocaine and preserved it on appeal. The District Court apparently concluded that it was sufficient merely to yell "Police."

Counsel have cited, and the Court has found, no case in which evidence has been suppressed because the police, after identifying themselves, have failed to announce their purpose in demanding entry. In *United States v. Leichtnam,* 948 F.2d 370 (7th Cir. 1991), the court ruled that it is unnecessary to announce the purpose of entry if it is clear

that nobody is home. In *United States v. One Parcel of Real Property,* 873 F.2d 7, 9 (1st Cir.), *cert. denied sub nom, Latraverse v. United States,* 493 U.S. 891, 110 S.Ct. 236, 107 L.Ed.2d 187 (1989), the court observed the focus "is properly not on what 'magic words' are spoken by the police, but rather on how these words and other actions of the police will be perceived by the occupant" and thus "when officers pound on the door, yelling 'Police!' " this is sufficient, as it shows "they want in, presumably to search or arrest, not census-taking."

In our view, the identification of themselves as police and giving the occupants a reasonable time to respond are far more constitutionally significant than stating their purpose in demanding entry, and in the absence of special circumstances, such as an inquiry from within, the failure to state the purpose does not require suppression of evidence which is seized.

### B. *Length of time after announcing*

■ While upholding a search, a panel of this court recently stated that cases in which officers make a forced entry seconds after announcing their authority or purpose will be carefully scrutinized in the future to determine whether there was compliance with the requirements of § 3109. *United States v. Nabors,* 901 F.2d 1351, 1355 (6th Cir.), *cert. denied,* 498 U.S. 871, 111 S.Ct. 192, 112 L.Ed.2d 154 (1990). The record suggests that the police may have not waited a sufficient period of time from which refused admittance could be inferred and it also suggests that there may have been no basis for claiming an exception based upon an exigency. This issue was not raised by the appellant, even in his reply brief, although the omission was alluded to in the appellee's brief.

Rule 52(b), Fed.R.Crim.P., provides that plain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

Ordinarily Rule 52(b) is invoked by counsel who, in preparing an appeal, discover what they consider to be error to which they took no objection below. The rule is not so limited, however, and the

appellate court may take notice of an error on its own motion though it is never put forward by counsel.

3 Charles A. Wright, *Federal Practice and Procedure*, Criminal 2d § 856.

As to the application of the plain error rule to Fourth Amendment cases, see, LaFave, supra, § 11.7(d).

Justification for forced entry into a residence is ordinarily a fact-oriented issue. The outcome may be determined not only by evidence of events at the scene, but also by evidence concerning police knowledge of the propensities of persons who may occupy the premises. *Nabors*, 901 F.2d at 1354. Although the facts appear to have been well developed, it is possible that the failure of the defense to raise the issue may have influenced the manner in which the evidence was developed. Moreover, conflicting theories of law have evolved on the necessity of delaying entry when the search is for controlled substances. *See*, LaFave, supra, § 4.8(d) and *Hall v. Shipley*, 932 F.2d 1147, 1151 (6th Cir.1991), concerning two major schools of thought.

For these reasons, we will not consider the issue on its merits, notwithstanding the *Nabors* admonition.

### V.

The appellant's motion to suppress contains the following allegation:

> [T]he statements and evidence obtained by the officers from the Defendant were the sole and direct result of unlawful threats and intimidation, all of which were designed and calculated to and did violate the Defendant's Fourth, Fifth and Fourteenth Amendment rights.

▮ It has been the appellant's consistent position that the information he provided the police concerning the location of the cocaine was involuntarily provided. In its brief on appeal, the government has ignored the voluntariness issue.

The district court made the following findings which are relevant to the voluntariness of Finch's statements and actions.

> Upon entering the house, the officers discovered the defendant's mother, Mrs. Maple Finch, close enough to the door to hear the officers knock and yell. The defendant was discovered, along with a female companion, in a bedroom at the rear of the house.

> The defendant was told that the officers had a warrant to search for cocaine. All three of the occupants denied that there was any cocaine in the house.[2] Whereupon, defendant was told that if any cocaine were discovered, all three persons in the house could be arrested unless one person admitted sole ownership.[3] The defendant then directed the officers to the garage, where he showed them a quantity of crack cocaine hidden on top of a beam. When asked if there was any more cocaine in the house, the defendant said there was, and one of the officers then found a quantity of cocaine in powder form. At that point the defendant was placed under arrest and advised of his rights. The other occupants of the house were not arrested.

Unrefuted evidence establishes other facts relevant to the voluntariness issue. At least five officers were involved in the raid. In addition to breaking down the front door, they broke down the locked bedroom door and confronted the occupants with drawn guns. None of the occupants were free to leave. Finch testified that he disclosed the location of the cocaine to the police so that his mother would not be arrested.

The court expressed no conclusion concerning the voluntariness of Finch's state-

---

2. It is unrefuted that the defendant's mother was held in the living room and that the other two occupants of the house were confronted in a bedroom. It does not, therefore, appear that all three of them were together for interrogation. Officer Ballard testified that "they stated there was no cocaine inside the residence." It is not clear from the record which of the occupants he was referring to.

3. Although the officer did use the word "possibility" during his testimony, in response to the question, "So you were telling him that his mother would be arrested if you found cocaine, unless he owned up to it", his response was, "If nobody admitted to it, yes, we would lock them all up in the house."

ment and action except to deny the motion to suppress.

In *United States v. Sangineto–Miranda,* 859 F.2d 1501 (6th Cir.1988), the Court, citing *Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), clarified the distinction between suppression of the fruit of a statement obtained in violation of *Miranda* and the fruit of an involuntary statement which is the product of inherently coercive police tactics. This case falls under the latter.

Having Finch show the police where the cocaine was stashed was the functional equivalent of interrogating Finch to obtain a confession. His response was the functional equivalent of a confession. *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). The police did not know where the cocaine was hidden. Its seizure resulted directly from the confession.

Whether Finch's statements were involuntary must be determined from the totality of the circumstances. *Fikes v. Alabama,* 352 U.S. 191, 197, 77 S.Ct. 281, 284, 1 L.Ed.2d 246 (1957); *Oregon v. Elstad,* 470 U.S. at 318, 105 S.Ct. at 1297. For the reasons developed herein, it may have been appropriate for five police officers to break into the Finch residence. It is ordinarily reasonable for police officers to draw guns when breaking into a residence under the authority of a search warrant to search for controlled substances. It does not violate the occupant's constitutional rights to be detained during the conduct of a search. *Michigan v. Summers,* 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). The fact, however, that police conduct prior to Finch's interrogation may have been constitutionally permissible does not alter the fact that the atmosphere was inherently oppressive. Subsequent police conduct must be viewed in light of the atmosphere which they created.

Whether the police told Finch that they *would* arrest the women or *might* arrest them is of little moment. It was a real threat.

Coercion may involve psychological threats as well as physical threats. Specifically, threats to arrest members of a suspect's family may cause a confession to be involuntary. *See, Rogers v. Richmond,* 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961). The fact that artifice or deception was not calculated to procure an untrue statement does not protect an involuntary confession from suppression.

At the time the threat was made, the police had no basis for concluding (1) that either woman had knowledge of the existence of cocaine in the house; (2) that either woman had knowledge that Finch was involved in the distribution of cocaine; (3) that a conspiracy existed; (4) that either woman was in constructive possession of the cocaine for which the police were searching; or (5) that either woman was an aider or abettor. Furthermore, the context of the threat is not such that it may be found to have been conditioned upon any fact except finding cocaine. In short, there was no probable cause to arrest the women and therefore, no legal basis existed for threatening to do so.

On the record in the case viewed from the light most favorable to the government, Finch's statement was involuntary and in violation of his right against self-incrimination.

## CONCLUSION

It was error to deny the motion to suppress the confession and the cocaine.[4] Upon remand, the appellant shall be allowed to withdraw his plea.

BATCHELDER, concurring in part and dissenting in part.

I concur with the majority as to all issues except the question of the coerced confession. As to that issue, I concur in the majority's holding that, in light of the totality of the circumstances, the defendant's actions in response to the officers' threat to arrest all of

4. We recognize that there is an inevitable discovery exception to the exclusionary rule. In our view the exception is inapplicable here because at the hearing on the motion to suppress, the

government failed to offer evidence concerning the probability of finding the cocaine upon execution of the search warrant.

the occupants of the house were the functional equivalent of a confession that was involuntarily made. And, I concur in part in the majority's reversal of the district court's denial of the motion to suppress the defendant's confession. However, because I believe that the confession as it relates to ownership of the cocaine must be distinguished from the cocaine that was obtained from that confession, I would remand to the district court for a determination of whether the discovery of the cocaine was inevitable despite the coerced confession.

Evidence obtained from a coerced confession may still be admissible against a defendant if the discovery of the evidence was inevitable. In *Nix v. Williams*, the Supreme Court adopted the inevitable discovery exception to the exclusionary rule, holding that evidence obtained unlawfully will not be suppressed if the government can prove that the evidence inevitably would have been obtained through lawful means. 467 U.S. 431, 444, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984) (discovery of murder victim's body by volunteers inevitable despite illegally obtained confession). The Court explained that "if the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means ... then the deterrence rationale has so little basis that the evidence should be received." *Id.* A panel of this Court in *United States v. Buchanan*, 904 F.2d 349, 356 (6th Cir.1990), noted the requirements for application of the inevitable discovery rule:

> (1) a reasonable probability that the evidence in question would have been discovered by lawful means but for the police misconduct; (2) that the police possessed the leads making the discovery inevitable at the time of the misconduct; and (3) that the police were actively pursuing [an] alternative line of investigation prior to the misconduct.

*Id.* (quoting *United States v. Webb*, 796 F.2d 60, 62 (5th Cir.1986), *cert. denied*, 479 U.S. 1038, 107 S.Ct. 894, 93 L.Ed.2d 846 (1987)).

This inevitable discovery rule may very well apply here since the officers entered the house with both probable cause and pursuant to a valid search warrant. The police lawfully could have searched the rafters in the garage under that warrant, and there is a "reasonable probability" that the cocaine would have been found by them. The police knew that they were searching for cocaine, and they were in the process of searching pursuant to the valid warrant at the time that defendant confessed. This case is unlike the situation in which the police enter a home without probable cause and without a valid search warrant and then obtain evidence unlawfully through a coerced confession or otherwise. *Buchanan*, 904 F.2d at 356 (drugs would not have been found without warrantless entry of home without probable cause). *See United States v. Lamas*, 930 F.2d 1099, 1103 (5th Cir.1991) (inevitable discovery rule applied where police on way to get warrant).

If the inevitable discovery rule does apply here, then the cocaine evidence would be admissible against Finch. However, the unlawfully obtained confession still must be suppressed, and accordingly the defendant's act of showing the police the cocaine, which we have held is the equivalent of a confession that he owned the cocaine, could not be used at trial.

The government bears the burden of proving that the inevitable discovery rule applies. *United States v. Hurtado*, 905 F.2d 74, 76 (5th Cir.1990) (en banc) (citing cases). The government did not address the issue on appeal because the defendant's brief did not squarely raise the issue of a coerced confession; rather the defendant's brief was directed toward the officers' failure to give him his *Miranda* warnings. Although the issue of an involuntary confession was raised generally in defendant's motion to suppress, neither the government nor the district court raised the issue at the trial level. Therefore, I would remand the case to the district court to make findings as to whether the cocaine is admissible against Finch because the officers inevitably would have found it under the valid search warrant that they were in the process of executing at the time of the confession. *See United States v. Richardson*, 949 F.2d 851 (6th Cir.1991) (remand to examine inevitable discovery exception since no record made at district court). If the district

court determines that the inevitable. discovery rule does apply to the cocaine, I would hold that the district court nevertheless should permit the defendant to withdraw his guilty plea because his confession, which goes to his ownership of the admissible cocaine, must be suppressed.

Accordingly, I would reverse the district court in that the confession was involuntarily given and thus must be suppressed, but remand on the issue of whether the cocaine is admissible under the inevitable discovery rule.