**UNITED STATES of America,**
**Plaintiff,**

v.

**Jeffrey DIXON, Defendant.**

**No. CR–3–00–091.**

United States District Court,
S.D. Ohio,
Western Division.

Nov. 18, 2002.

---

David Horne, Dayton, OH, for Plaintiff.

S. Allen Early, Detroit, MI, for Defendant.

## DECISION AND ENTRY OVERRULING IN PART AND OVERRULING, AS MOOT, IN PART DEFENDANT'S MOTION TO SUPPRESS EVIDENCE (DOC. # 14)

RICE, Chief Judge.

The Defendant Jeffrey Dixon ("Defendant" or "Dixon") is charged in the Indictment (Doc. # 8) with one count of attempting to possess with intent to distribute in excess of five kilograms of cocaine. This case is now before the Court on the Defendant's Motion to Suppress Evidence (Doc. # 14).

The Defendant's motion contains three branches. Addressing the three branches in reverse order, the Defendant requests with the third branch of his motion that the Court suppress any statements he may

have made to investigating officers. On March 22, 2001, this Court conducted an oral and evidentiary hearing on the Defendant's motion. Prior to witnesses testifying, the Government indicated that the Defendant had not made any such statements which the Government would seek to introduce at trial in its case in chief. *See* Transcript of March 22, 2001 Hearing (Doc. # 22) at 4. *See also,* Doc. # 23 at 2. Accordingly, the Court overrules the third branch of Defendant's motion, as moot.

█ With the second branch of his motion, the Defendant requests that the Court suppress recordings of his telephone conversations with Peter Gonzalez ("Gonzalez"), a Government informant. According to Defendant, recording those conversations violated his rights under the Fourth Amendment and Title III of the Omnibus Crime Control and Safe Streets Act ("Title III"), 18 U.S.C. §§ 2510–21, because neither he nor Gonzalez consented to that activity. During the March 22nd evidentiary hearing, evidence was introduced on the issue of whether Gonzalez had given his consent to the recording of his conversations with the Defendant. In his post-hearing memorandum (Doc. # 25), the Defendant has not addressed that issue. Without addressing whether the Defendant has waived this branch of his motion by failing to address it in his post-hearing memorandum, the Court finds that the evidence presented establishes that Gonzalez had consented to having his conversations with the Defendant recorded, and, further, concludes that such consent precludes the suppression of the recordings under either the Fourth Amendment or Title III. During the evidentiary hearing, Gonzalez testified that he had given

the Government consent to record his conversations with the Defendant. Gonzalez's statements in that regard were corroborated by the testimony by Bill Toney, a police officer employed by the City of Trotwood, Ohio. The Sixth Circuit has indicated that "neither the United States Constitution nor any federal statute prohibits law enforcement officials from recording or listening to phone conversations so long as one of the parties to the conversation has consented." *Manetta v. Macomb County Enforcement Team,* 141 F.3d 270, 276 (6th Cir.1998). *See also, United States v. McKneely,* 69 F.3d 1067, 1073 (10th Cir. 1995) ("[w]hen the government records a defendant's conversation with another party, pursuant to that party's consent, neither the Fourth Amendment nor [Title III] is violated"); *United States v. Tangeman,* 30 F.3d 950, 952 (8th Cir.) (same), *cert. denied,* 513 U.S. 1009, 115 S.Ct. 532, 130 L.Ed.2d 435 (1994). Accordingly, the Court overrules the second branch of the Defendant's motion, with which he has requested that the Court suppress the recordings of his conversations with Gonzalez.

The Defendant devotes the entirety of his post-hearing memorandum to the first branch of his motion, to wit: his request that the Court suppress the evidence that was seized when search warrants were executed at 640 Gramont Avenue, Dayton, Ohio, 706 West Third Street, Dayton, Ohio, and 1630 Parkhill Avenue, Dayton, Ohio. United States Magistrate Judge Michael Merz issued those search warrants on the basis of identically worded affidavits executed by Special Agent Raymond Dratt ("Dratt") of the Drug Enforcement Administration ("DEA") on September 28, 2000.[1]

---

1. Government Exhibits 1 and 2 were the search warrant and application for search warrant for 640 Gramont Avenue. Government Exhibits 3 and 4 were the search warrant and application for search warrant for 706 West Third Street, while the search warrant and application for search warrant for 1630 Parkhill Avenue, comprised Government Exhibits 5 and 6.

As a means of analysis, the Court will initially review the statements contained in those affidavits, following which it will survey the basic principles which must be applied when a defendant seeks the suppression of evidence seized pursuant to a search warrant. The Court will then address the Defendant's arguments in support of his request that the Court suppress the evidence seized from the three locations.

In his affidavit, Dratt states that DEA agents in Miami, Florida, arrested five individuals on July 28, 2000. Dratt Affidavit (Government's Exhibit 2, 4 and 6) ¶ 5. One of those arrested, who is identified in the affidavit as CS1,[2] agreed to cooperate with the DEA. *Id.* On September 15, 2000, CS1 told DEA agents that he had been delivering multiple kilograms of cocaine to an individual in Dayton, known to him as "Jeff." *Id.* at ¶ 6. CS1 identified a photograph of the Defendant as "Jeff." *Id.* While he remained in Florida, CS1, at the direction of law enforcement officials, paged Dixon. *Id.* at ¶ 7. The Defendant, who was in Dayton, responded with his own page, bearing a telephone number for an Ameritech pay telephone located at 4779 Germantown Pike, Dayton, Ohio. *Id.* CS1 called Dixon at that telephone and the two discussed the Defendant's desire to purchase multiple kilograms of cocaine. *Id.* Defendant indicated that he was willing to pay $20,000 per kilogram. *Id.* CS1 told Dixon that he would get back with him if he could locate cocaine for that price. *Id.* That telephone conversation was monitored and recorded by law enforcement officials. *Id.* Thereafter, DEA agents in Miami relayed the information to their counterparts with the DEA's Dayton office, and arrangements were made for CS1 to travel to Dayton. *Id.* at ¶ 8.

On September 27, 2000, CS1 flew to Dayton and met with DEA agents including Dratt. *Id.* at ¶ 9. CS1 identified pictures of the Defendant as "Jeff," and 640 Gramont Avenue, 706 West Third Street and 1630 Parkhill Drive as locations which he had visited with Dixon while conducting drug transactions. According to CS1, he had delivered approximately 600 kilograms of cocaine to Dixon between late 1996 and July, 2000, when he (CS1) had been arrested. *Id.* at ¶ 10. CS1 also told the Dayton DEA agents that he had delivered cocaine to the Daytonian Car Wash and Detail Shop, a car wash owned by Defendant and located at 706 West Third Street. *Id.* Indeed, CS1 indicated that his most recent delivery of cocaine to Dixon had been made at that location. *Id.* at ¶ 13 According to the *Haines Criss Cross Directory,* the Daytonian Car Wash and Detail Shop and a construction company were located at 706 West Third Street. *Id.* Utilities for 640 Gramont have been in the name of Mizell Dixon since 1964. *Id.* at ¶ 11. CS1 indicated that 640 Gramont had been involved in prior drug transactions. *Id.* On January 30, 2000, Dixon had filed a criminal complaint with the Dayton Police Department and listed 1630 Parkhill Drive as his residence. *Id.* at ¶ 12. In addition, the *Haines Criss Cross Directory* lists Jeffrey Dixon as the occupant of 1630 Parkhill Drive. *Id.* According to CS1, the Defendant picked up money from that location during previous drug transactions. *Id.* On September 28, 2000, the day upon which Dratt executed his affidavit, CS1 had continued to negotiate with Dixon concerning the delivery of cocaine. *Id.* at ¶ 14.

In *United States v. Smith,* 182 F.3d 473 (6th Cir.1999), the Sixth Circuit restated certain fundamental principles that a court

---

**2.** Although Dratt's affidavit does not expressly so state, the Court assumes that Gonzalez is the individual identified therein as CS1.

must apply when a defendant argues that evidence, seized upon the execution of a search warrant, must be suppressed because the supporting affidavit did not establish the existence of probable cause:

The Fourth Amendment, which states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation," U.S. CONST. amend. IV, requires that probable cause be determined "by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out federal crime." *Johnson v. United States,* 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436 (1948). In order for a magistrate to be able to perform his official function, the affidavit must contain adequate supporting facts about the underlying circumstances to show that probable cause exists for the issuance of the warrant. *Whiteley v. Warden,* 401 U.S. 560, 564, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). Probable cause is defined as "reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion." *United States v. Bennett,* 905 F.2d 931, 934 (6th Cir.1990). It requires "only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates,* 462 U.S. 213, 244 n. 13, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). A warrant must be upheld as long as the magistrate had a "substantial basis for ... conclud[ing] that a search would uncover evidence of wrongdoing...." *Id.* at 236, 103 S.Ct. 2317. *See also United States v. Finch,* 998 F.2d 349, 352 (6th Cir.1993).

*Id.* at 476–77. In *Illinois v. Gates,* 462 U.S. 213, 230, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Supreme Court stressed that the existence of probable cause must be determined from the totality of the circumstances. When determining whether Dratt's affidavit established the existence of probable cause to believe that contraband or evidence of the distribution of cocaine would be found at the three places to be searched, this Court must examine the totality of those circumstances in a "realistic and commonsense fashion." *United States v. Van Shutters,* 163 F.3d 331, 336 (6th Cir.1998), *cert. denied,* 526 U.S. 1077, 119 S.Ct. 1480, 143 L.Ed.2d 563 (1999). Of course, this Court also must afford great deference to the determination of probable cause made by Judge Merz who issued the search warrant. *United States v. Allen,* 211 F.3d 970 (6th Cir.) (*en banc*), *cert. denied,* 531 U.S. 907, 121 S.Ct. 251, 148 L.Ed.2d 181 (2000); *United States v. Akram,* 165 F.3d 452, 456 (6th Cir.1999). Where, as in the present case, oral testimony was not presented to the issuing magistrate, the existence of probable cause to support a warrant must be ascertained exclusively from the four corners of the affidavit. *See e.g., Whiteley v. Warden,* 401 U.S. 560, 565 n. 8, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); *United States v. Vigeant,* 176 F.3d 565, 569 (1st Cir. 1999); *United States v. Etheridge,* 165 F.3d 655, 656 (8th Cir.1999); *United States v. Weaver,* 99 F.3d 1372, 1377 (6th Cir. 1996).

In *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Supreme Court modified the exclusionary rule "so as not to bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *Id.* at 905, 104 S.Ct. 3405. *See also, United States v. Czuprynski,* 46 F.3d 560 (6th Cir.1995) (*en banc*). The *Leon* Court also held that the good faith exception to the exclusionary rule would not apply under the following circumstances, to wit: 1) when the search warrant was obtained in violation of *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); 2) when the issuing magistrate has failed to act in a

neutral and detached fashion; 3) when the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" and 4) when the warrant is so facially deficient (i.e., it fails to describe the particular place to be searched or the items to be seized) that the executing officers could not have reasonably presumed that it was valid. 468 U.S. at 923, 104 S.Ct. 3405. *See also, Van Shutters, supra; United States v. Leake,* 998 F.2d 1359, 1366 (6th Cir.1993).

▇▇▇▇ Initially, the Defendant argues that Dratt's affidavit failed to establish probable cause to believe that he (Dixon) had engaged in criminal activity (i.e., offenses relating to the distribution of controlled substances), because that affidavit was based primarily upon information supplied by CS1, whose veracity and reliability, as well as the basis of his knowledge, were not established in that affidavit.[3] This Court cannot agree. In *Gates,* the Supreme Court rejected the inflexible two-part test set forth in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), under which an informant's veracity or reliability and the basis of his knowledge had to be demonstrated in order to establish the existence of probable cause to believe that contraband or evidence of a crime was located in a particular place.

462 U.S. at 230, 103 S.Ct. 2317. In place of the two-part test, the *Gates* Court adopted a totality of the circumstances approach. *Id.* Therein, the Supreme Court noted that an informant's veracity, reliability and the basis of his knowledge are "understood as relevant considerations in the totality of circumstances analysis that traditionally has guided probable cause determinations." *Id.* at 232, 103 S.Ct. 2317.[4] Herein, Dratt's affidavit established probable cause to believe that the Defendant was violating federal statutes relating to the distribution of narcotics. Dratt stated that CS1 had told officers that he had delivered approximately 600 kilograms of cocaine to Defendant from the end of 1996, through July of 2000. Officers were able to corroborate CS1's information that the Defendant was involved in the distribution of cocaine by monitoring a telephone conversation between the two, during which they discussed Dixon's desire to purchase multiple kilograms of cocaine for the price of $20,000 per kilogram. Moreover, through their investigation, officers were able to corroborate CS1's statements, linking the Defendant to certain locations. In particular, the officers learned that the Defendant operated businesses at 706 West Third Street, had claimed that 1630 Parkhill Drive as his residence and had used 640 Gramont Avenue as the place to which some of his bills could be mailed.

---

**3.** If Dratt's affidavit failed to establish probable cause to believe that Dixon had been involved in the distribution of cocaine, then clearly it did not establish probable cause to believe that contraband or evidence of criminal activity would be found at the places to be searched.

**4.** Although conceding that *Gates* established a totality of the circumstances test under which an informant's reliability, veracity and the basis of his knowledge are only factors to consider in the probable cause equation, the Defendant contends that courts will find that

an affidavit based upon information supplied by an informant establishes probable cause only when "1) the affidavit contains an explicit and detailed description of alleged wrongdoing, along with the statement that the event was seen firsthand, and 2) the police have corroborated the tip with independent investigative work." Doc. # 25 at 5 (unnumbered). This Court cannot agree. In *Allen,* the Sixth Circuit, sitting *en banc,* rejected a similar two-pronged analysis, noting that in accordance with *Gates* the totality of the circumstances approach is controlling. 211 F.3d at 975.

Based upon the foregoing, the Court rejects the Defendant's contention that Dratt's affidavit fails to establish probable cause to believe that the Defendant was involved in offenses relating to the distribution of cocaine, because that affidavit was based upon information supplied by an informant, whose veracity and reliability, as well as the basis of his knowledge, were not established in that affidavit.

■ Alternatively, the Defendant argues that the information set forth in Dratt's affidavit failed to establish the existence of probable cause to believe that contraband or evidence of the distribution of cocaine would be found at 706 West Third Street, 640 Gramont Avenue and 1630 Parkhill Drive. In part, the Defendant bases this argument on the staleness doctrine. The Defendant points out that the search warrants were issued approximately two months after CS1 alleged he last delivered cocaine to him at 706 West Third Street and that the affidavit does not state when the other two places which were to be searched (640 Gramont Avenue and 1630 Parkhill Drive) had last been used in connection with the alleged distribution of cocaine. As a means of analysis, the Court will initially review the standards which must be applied to resolve the question of whether an affidavit contains stale information, following which it will turn to the question of whether Dratt's affidavit established probable cause to search the three places set forth in the search warrants signed by Judge Merz, or whether, in the alternative, same is defective on account of staleness.

In *United States v. Henson,* 848 F.2d 1374 (6th Cir.1988), *cert. denied,* 488 U.S. 1005, 109 S.Ct. 784, 102 L.Ed.2d 776 (1989), the Sixth Circuit discussed the use of stale information to support a search warrant:

> The function of a staleness test in the search warrant context is not to create an arbitrary time limitation within which discovered facts must be presented to a magistrate. Rather, the assay focuses on one relevant part of the determination that reasonable probable cause exists to warrant the issuance of an order to ... perform a search.... [I]nformation which demonstrates a chain of related events covering a broad span of time continuing to the current period may furnish a most reliable indicia of present activity, thereby clearly demonstrating that probable cause exists for the order to intrude. .... In general, the basic criterion as to the duration of probable cause is the inherent nature of the crime.... [I]f an affidavit recites activity indicating protracted or continuous conduct, time is of less significance.

*Id.* at 1382 (alterations in the original, citation and internal quotation marks omitted). *See also, United States v. Canan,* 48 F.3d 954, 959 (6th Cir.1995), *cert. denied,* 516 U.S. 1050, 116 S.Ct. 716, 133 L.Ed.2d 670 (1996).

As an initial matter, Dratt's affidavit described ongoing criminal activity in which Dixon was allegedly engaged, a "regenerating conspiracy" in the language of the Sixth Circuit. *See United States v. Greene,* 250 F.3d 471, 480 (6th Cir.2001) (noting that the character of the crime, i.e., whether it was a "chance encounter in the night or regenerating conspiracy," is a factor to consider in determining whether information set forth in an affidavit in support of a search warrant is stale). For instance, Dratt recounted that CS1 had told him that he had supplied approximately 600 kilograms of cocaine to the Defendant from late 1996, through July, 2000. In addition, Dratt indicated that CS1 had been in contact with the Defendant concerning a cocaine transaction a few days before the agent had executed his affidavit and that CS1 and the Defendant had continued to negotiate such a transaction on

the day that Dratt executed his affidavit. That CS1 had delivered such a significant amount of cocaine to Defendant over such a long period of time and that Defendant had spoken with the informant on the day that the affidavit was executed about obtaining additional cocaine raise an inference that evidence of criminal activity would continue to exist, even though the last delivery of cocaine had occurred approximately two months before the search warrants were obtained. Given that Dratt's affidavit indicated that CS1 had made his most recent delivery of cocaine to Defendant at 706 West Third Street, the Court concludes that the affidavit did not contain stale information and, moreover, that it established probable cause to believe that contraband or evidence of criminal activity would be found at that location.

■ With respect to 640 Gramont Avenue and 1630 Parkhill Drive, the Defendant points out that Dratt's affidavit provided little current information to link those locations to the criminal activity in which the Defendant was allegedly engaging. Therein, Dratt indicated that CS1 had identified those two locations as places he and Dixon had visited during the course of their cocaine transactions. However, there is no indication as to how recently CS1 and Dixon had visited those locations during the course of their cocaine transactions. This Court finds it unnecessary to decide whether Dratt's affidavit established probable cause to believe that contraband or evidence of the distribution of cocaine would be found at those locations, because in accordance with the good faith exception to the exclusionary rule established in *Leon*, the evidence seized when the search warrants were executed need not be suppressed. As is indicated above, *Leon's* good faith exception to the exclu-

sionary rule is inapplicable in four circumstances. Herein, the Defendant argues only that the "so lacking" circumstance (i.e., that Dratt's affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable") renders *Leon* and the good faith exception to the exclusionary rule inapplicable. Based upon the Sixth Circuit authority discussed below, this Court cannot agree.

In *United States v. Savoca*, 761 F.2d 292 (6th Cir.), *cert. denied*, 474 U.S. 852, 106 S.Ct. 153, 88 L.Ed.2d 126 (1985), the Sixth Circuit applied *Leon* in a case in which the defendant argued that an officer's affidavit failed to establish probable cause to search a particular location. Therein, officers obtained a search warrant for a motel room located in Phoenix, Arizona. The affidavit with which that warrant had been obtained indicated that FBI agents in Phoenix had just arrested the defendant and another individual pursuant to federal arrest warrants for a bank robbery which had taken place in Austinburg, Ohio, at an unspecified prior date; that the two suspects had been seen in the motel room on two prior occasions; and that the two suspects were allegedly responsible for several other bank robberies in northeast Ohio and northwest Pennsylvania. Although concluding that the officer's affidavit did not contain probable cause to search the motel room,[5] the Sixth Circuit held that in accordance with *Leon*, the evidence seized therefrom could not be suppressed. The Sixth Circuit reasoned that the affidavit in support of the warrant was not so lacking in indicia of probable cause to as to render official belief in its existence entirely unreasonable, because the affidavit amply demonstrated the existence of probable

---

**5.** The Sixth Circuit concluded that the affidavit did not establish probable cause to search the motel room, because it did not indicate how recently the defendant had been in that motel room or when he had allegedly committed the bank robberies.

cause to believe that the defendant had engaged in criminal activity, even though a nexus between that activity and the place to be searched was missing.

Also instructive is *United States v. Schultz*, 14 F.3d 1093 (6th Cir.1994). Therein, a police officer was told by an individual he had arrested for possession of controlled substances that the defendant was his supplier. Armed with that and other information developed in his investigation, the officer obtained search warrants for safe deposit boxes which the defendant maintained at a local bank. A substantial amount of cash was recovered during the search of those safe deposit boxes. After having been indicted, the defendant moved to suppress that currency, arguing that the officer's affidavit failed to establish probable cause to believe that contraband or evidence of a crime would be found therein. The District Court rejected the defendant's argument and, as a consequence, overruled his motion. Upon appeal, the Sixth Circuit held that the District Court had erroneously concluded that probable cause existed, since the officer's affidavit failed to make a connection between the safe deposit boxes and the defendant's criminal activity. The Sixth Circuit pointed out that the only information linking the defendant's safe deposit boxes to his alleged criminal activity was the officer's statement that, based upon his experience, it was not uncommon for those engaged in the distribution of controlled substances to maintain records of that activity in their safe deposit boxes. According to the Sixth Circuit, that information constituted nothing more than the officer's hunch or guess that evidence of criminal activity would be found therein. Nevertheless, in accordance with the good faith exception to the exclusionary rule established in *Leon*, the Sixth Circuit affirmed the decision of the District Court, overruling the defendant's motion to suppress the currency which had been seized from his safe deposit boxes. With respect to the "so lacking" circumstance under which the good faith exception will not apply, the Sixth Circuit concluded that, even though the officer's affidavit did not establish a nexus of probable cause between the defendant's criminal activity and the safe deposit boxes, "the connection was not so remote as to trip on the 'so lacking' hurdle." *Id.* at 1098.

In *Van Shutters, supra,* officers obtained a warrant to search a residence in Tennessee, believed to be occupied by the defendant, and found numerous incriminating items during the search. Although the search warrant and supporting affidavit described the premises to be searched with particularity, identified the items to be seized in detail, and recounted the criminal scheme in which the defendant had allegedly been engaged, the affidavit neglected to indicate why the affiant believed that the defendant himself had any connection with that residence. *See* 163 F.3d at 336. The defendant argued that the failure to establish a nexus between the residence and the evidence being sought (i.e., evidence of defendant's criminal activity) rendered probable cause lacking and the warrant invalid. The Sixth Circuit held that, even if the warrant were not supported by probable cause, the search would be upheld on the basis of *Leon* and the good faith exception to the exclusionary rule, because only a law enforcement officer with extraordinary legal training would have detected the deficiencies in the affidavit, due to the detail contained therein which is discussed above. *Id.*

Herein, Dratt's affidavit contained more information linking the Defendant's alleged criminal activity to 640 Gramont Avenue and 1630 Parkhill Drive than that which was contained in the affidavits at

issue in *Savoca, Schultz* and *Van Shutters.* Dratt indicated in his affidavit that CS1 had told him that he had visited those locations while conducting drug transactions with the Defendant.[6] Defendant is further linked to 640 Gramont Avenue and 1630 Parkhill Drive by the additional statements in Dratt's affidavit that the Defendant used 640 Gramont as a place to which some of his mail was sent and that he had listed 1630 Parkhill Drive as his home address.[7] Based upon that information, this Court concludes, as a matter of law, that, even if Dratt's affidavit did not establish probable cause to believe that contraband or evidence of criminal activity would be found at 640 Gramont Avenue and 1630 Parkhill Drive, that affidavit was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon,* 468 U.S. at 923, 104 S.Ct. 3405. Accordingly, the Court declines to suppress the evidence seized from those locations.

Based upon the foregoing, the Court overrules the Defendant's Motion to Suppress Evidence (Doc. # 14) in its entirety.[8]

---

**6.** According to the affidavit, CS1 told Dratt that 640 Gramont Avenue had been involved in his prior drug transactions with the Defendant, and that the Defendant had picked up money from 1630 Parkhill Drive during several such transactions.

**7.** Dratt was able to corroborate this information during his investigation.

**8.** The Court has overruled that motion as moot, as it relates to statements Defendant may have made to investigating officers.