NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0418n.06

No. 08-3121

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

Jun 11, 2009
LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

CARLOS HUNTER,

    Defendant-Appellant.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO

_____/

BEFORE:    CLAY and GIBBONS, Circuit Judges; and GREER, District Judge.[*]

    **CLAY, Circuit Judge.** Following his conditional guilty plea to one count of being a felon in possession of a firearm, Defendant Carlos Hunter ("Hunter") appeals the district court's order denying his motion to suppress his confession to police officers that he possessed the rifle found in the vehicle he was driving. On appeal, Hunter contends that his statement was involuntary, because the police coerced him into making the statement by threatening his girlfriend with a federal gun charge. For the reasons that follow, we **AFFIRM** the judgment of the district court.

**BACKGROUND**

I.    **Factual Background**

_____

    [*]The Honorable J. Ronnie Greer, United States District Judge for the Eastern District of Tennessee, sitting by designation.

On January 1, 2006, police officers in four police cars responded to a dispatch reporting that shots were fired near Sarvis Street in Cincinnati. The dispatch described the shooting suspect as an African American male with long hair and tan clothing, stated that an automatic weapon may have been involved, and referred to a silver vehicle that had been spotted at the scene. One of the arriving officers, Sergeant Douglas Frazier ("Sergeant Frazier"), saw Hunter next to a silver car. Sergeant Frazier saw Hunter appear to place something in the back seat of the car, and then walk away from the vehicle toward an apartment building down the street. At the scene, Sergeant Frazier also observed approximately twenty to thirty people, many of whom were running from the area, although none of them was apprehended. Another officer, Thomas Finley ("Officer Finley"), handcuffed Hunter, read Hunter his *Miranda* rights, and placed him in the back seat of one of the police cars. Sergeant Frazier, looking through the window of the silver car, saw an AK-47 rifle marked with black tape on the floor of the back seat. Sitting in the back seat of the police car, Hunter denied that the rifle was his. The officers at the scene also recovered a revolver from the grass next to the street, and found shell casings of bullets from a nine-millimeter, an AK-47 and a shotgun across the street from the vehicle.

In the passenger seat of the silver car was Marquita Buck ("Buck"), who told the officers that she was Hunter's girlfriend. Buck was arrested and placed in a different police car from Hunter. Officer Finley informed Buck that he had just talked to his supervisor, who believed that Buck could be charged with a federal offense carrying a mandatory three-year minimum sentence for carrying an AK-47. It is undisputed that Officer Finley's statement to Buck–captured by videotape

2

recording–was incorrect, as Buck could not have been charged with any federal offense for possessing the AK-47.

Hunter and Buck were taken to the police station in the separate cars. At the station, two to three officers questioned Hunter and Buck together in one room. Sergeant Frazier, who had been one of the two supervising officers at the scene, reiterated to Hunter that both he and Buck could be charged for possessing the AK-47. Sergeant Frazier also told Hunter that he was going to conduct a gunshot residue test on Hunter to determine whether Hunter had fired any shots that day, and as a prerequisite to administering the test, Sergeant Frazier asked Hunter if he had used fireworks earlier in the day. When Hunter told Sergeant Frazier that he had in fact set off fireworks earlier, Sergeant Frazier informed Hunter that the test could distinguish residue from fireworks and residue from shooting a gun. According to Sergeant Frazier, he administered the test, and shortly thereafter, Hunter asked to speak with him. Hunter then told him "that he didn't want his girlfriend to go to jail for him and that he fired the gun." (Joint Appendix ("J.A.") at 87.) Hunter also told Sergeant Frazier that he had purchased the gun from a gun store for $400 earlier that day, and that he had put the black tape on it as decoration. Officer Finley estimated that approximately three to four hours passed from the time of Hunter's arrest to the time he confessed, although he could not recall how much of that time was actually spent questioning Hunter.

## II.    Procedural Background

On March 15, 2006, a federal grand jury indicted Hunter on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). The district court initially found that Hunter was incompetent to stand trial, and committed Hunter to the custody of the state to determine

whether Hunter could become competent after receiving appropriate medical treatment. On May 10, 2007, the district court found Hunter competent.[1]

On June 18, 2007, Hunter moved to suppress evidence of his statement to Sergeant Frazier at the police station. On August 7, 2007, the district court held a suppression hearing, at which several of the officers testified and recounted the events as described above. Hunter did not testify.

At the suppression hearing, Officer Finley did not initially recall telling Buck that she could face a federal charge, but after listening to the audiotape recording of his conversation with Buck while she sat in the police car, he acknowledged that the voice on the tape informing her of a possible federal charge was his. Officer Finley could not recall which supervisor had told him that a federal charge against Buck was possible. Officer Finley did not know of any specific federal crime for which Buck could have been charged; when pressed to think of a possible federal charge against Buck on cross-examination, he suggested that Buck could perhaps have been charged with being a felon in possession of a firearm, although he acknowledged that he never had any reason to suspect that she was a felon. On re-direct, the government showed Officer Finley a computer-aided dispatch printout from the night of the arrests that referred to a possible automatic weapon at the scene, and asked Officer Finley if, from far away, the AK-47 could have looked like an automatic weapon. Officer Finley answered that the two types of weapons were not easily distinguishable from

---

[1]The record is unclear as to the reason for the district court's initial incompetency order, other than a reference in the court's order that Hunter was suffering from a "mental disease or defect." (J.A. at 24-25.) Hunter does not challenge the court's subsequent finding of competency on appeal.

a distance. On re-cross, Officer Finley admitted that he could not recall ever learning from the dispatch that an automatic weapon might have been at the scene.

Sergeant Frazier testified that Hunter confessed "after I did the [gun-residue test] on him and advised him what the results of that test would yield." (J.A. at 112.) Sergeant Frazier acknowledged that he had mentioned to Hunter the possibility of charging Buck during the interrogation at the police station; however, he stated that he did not repeat the threat of a federal charge at the station. Sergeant Frazier also stated that after he raised the possibility of charging Buck, he then performed the gun residue test of Hunter, and it was only after the test that Hunter confessed. Sergeant Frazier testified that he did not recall Hunter mentioning federal charges when he confessed.

James Burk, an agent for the Bureau of Alcohol, Tobacco and Firearms, testified for the defense that he subsequently read in a police report that one of the police officers at the station had overheard Hunter confessing to Sergeant Frazier, and the police officer had recalled that Hunter had asked Sergeant Frazier if he was going to face "federal" charges because of the type of weapon he had. (J.A. at 159.)

On September 7, 2007, the district court denied the suppression motion. The court found that Officer Finley's threat to charge Buck with a federal offense was not coercive, because there was probable cause to charge Buck for carrying an AK-47 under state and municipal law, and "[t]he officers may therefore have believed in good faith that Ms. Buck could have been charged with unlawful possession of a machine gun in violation of 18 U.S.C. § 922(o)."[2] (J.A. at 14-15.) The

---

[2]Under § 922(o)(1), "it shall be unlawful for any person to transfer or possess a machinegun."

court then found that Sergeant Frazier's threat to administer a gun residue test that could distinguish between residue from fireworks and residue from the discharge of a firearm, "rather than the threat to charge Ms. Buck alone, triggered [Hunter's] confession." (J.A. at 15.) The court noted Hunter's "limited mental capacity"–including that Hunter was "'mildly mentally retarded' or 'borderline functioning range'"–but found that this fact was "offset somewhat by [Hunter's] significant prior experience with the criminal justice system." (J.A. at 13, 14.) The district court also stated that "[a]lthough there is double hearsay testimony Defendant was concerned the threatened charge against Ms. Buck would be federal, the direct evidence indicates Defendant simply did not want her to go to jail." (J.A. at 15.)

On October 11, 2007, after the district court denied his motion to suppress, Hunter pled guilty to being a felon in possession of a firearm, but preserved his right to appeal the district court's denial of his suppression motion. On January 18, 2008, the district court sentenced Hunter to 180 months of imprisonment. Hunter timely appealed the suppression ruling.

## DISCUSSION

### I.     Standard of Review

"On suppression issues, we review a district court's findings of fact for clear error, but we review all conclusions of law *de novo*." *United States v. Crowder*, 62 F.3d 782, 785 (6th Cir. 1995). "In determining the voluntariness of a confession, a reviewing court will not disturb the trial court's findings concerning specific events surrounding the confession unless clear error appears on the record." *United States v. Wrice*, 954 F.2d 406, 410-11 (6th Cir. 1992). Moreover, in reviewing a district court's denial of a motion to suppress an involuntary statement, this Court must view the

6

evidence in the light most favorable to the government. *United States v. Fowler*, 535 F.3d 408, 417 (6th Cir. 2008).

## II.     Analysis

For a defendant's confession to be involuntary and therefore procured in violation of the Fifth Amendment, "coercive police activity" must have preceded the confession. *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). "An admission is deemed to be coerced when the conduct of law enforcement officials is such as to overbear the accused's will to resist." *Ledbetter v. Edwards*, 35 F.3d 1062, 1067 (6th Cir. 1994). "This Court has established three requirements for a finding that a confession was involuntary due to police coercion: (i) the police activity was objectively coercive; (ii) the coercion in question was sufficient to overbear the defendant's will; and (iii) the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statement." *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999). This Court determines whether a defendant's statement to police was voluntary by examining "the totality of the circumstances." *United States v. Finch*, 998 F.2d 349, 356 (6th Cir. 1993). Circumstances to consider include "the age of the accused, his level of education and intelligence, his physical condition and emotional state at the time of the confession, his expressed fears of violent reprisals, actual physical punishment, the proximity of the coerciveness of the confession as given, and the inherent coerciveness of the confession as given." *Wrice*, 954 F.2d at 411. In determining whether a defendant's will could have been overborne, the court may also consider whether the defendant had prior experience in the criminal justice system. *Ledbetter*, 35 F.3d at 1070. The government must

prove the voluntariness of the defendant's statement by preponderance of the evidence. *Mahan*, 190 F.3d at 422.

"[A] finding of coercion need not depend upon actual violence by a government agent; a credible threat is sufficient." *Arizona v. Fulminante*, 499 U.S. 279, 287 (1991). "Specifically, threats to arrest members of a suspect's family may cause a confession to be involuntary." *Finch*, 998 F.2d at 356. Whether a threat to prosecute a third party is coercive "turns on the issue of whether the threat could have been lawfully executed." *United States v. Johnson*, 351 F.3d 254, 263 (6th Cir. 2003). In *Finch*, police officers executing a search warrant at the defendant's residence, at which his mother and girlfriend were also present, told the defendant that if the defendant did not disclose the location of his drugs, the officers would arrest all three of them; the defendant then immediately told the police where the drugs were. *Finch*, 998 F.2d at 355. In reversing the district court's denial of the defendant's motion to suppress, this Court noted that all three of the *Mahan* factors were present: the police had no probable cause to arrest either woman, the interrogation occurred in an "inherently oppressive" atmosphere in which the occupants were detained in the residence by five officers drawing guns, and the defendant's testimony that the officers' threat motivated him to confess was supported by the fact that he confessed immediately after the threat was made. *Id.* at 355-56.

In this case, the district court found that none of the three prongs of the involuntary coercion test was present. The court found that the threat to file federal charges against Buck was not objectively coercive because Officer Finley may have believed in good faith that Buck could be so charged; it found that although the Hunter was mildly mentally retarded, his prior experience with

the criminal justice system offset his mental deficiencies; and it found that Hunter's motivation derived more from the gun-residue test Sergeant Frazier administered on Hunter's hands than from the threat to charge Buck with a federal offense.

Hunter argues that the threat to charge Buck with a federal offense was an objectively coercive tactic, and that his mild retardation rendered him vulnerable to coercive interrogation tactics. Regardless of the merits of these arguments, the district court did not clearly err in finding that the single mention of the possibility of bringing a federal charge against Buck did not motivate Hunter's decision to confess.

In fact, there is ample evidence to suggest that the threat to charge Buck with a federal crime was *not* the crucial motivating factor behind Hunter's confession. There is no evidence in the record which indicates that the officers repeated the threat of a federal charge at the station, where Hunter ultimately confessed. At the station, it was only after Sergeant Frazier introduced the matter of the gun-residue test that Hunter confessed. Sergeant Frazier testified that "when I told [Hunter] how the test works and [that the examiners will] be able to distinguish between fireworks and gunshot residue, then he told me that he wanted to talk to me." (J.A. at 87.) The defense offered no evidence to contradict Sergeant Frazier's chronology. Thus, unlike in *Finch*–where the defendant immediately responded to the threat by confessing and testified that the threat was his motivation for confessing, 998 F.2d at 355-56–in this case Hunter confessed immediately after Sergeant Frazier threatened to administer the gun residue test. The gun-residue test was just as plausible a motivating factor as the threat to bring federal charges against Buck. Moreover, there is no admissible evidence that, in spite of the chronology of events, the threat of federal charges was the crucial factor that motivated him

9

to confess. Although James Burk testified that Hunter had mentioned federal charges upon confessing, the district court properly discounted that evidence as double-hearsay.

The only admissible evidence that the threat to charge Buck motivated Hunter was that upon confessing, he told Sergeant Frazier that he did not want Buck to be charged. However, that statement provides no insight into whether it was the threat of *federal* charges that motivated Hunter. It would appear that the threat of charging Buck federally was not repeated throughout the interrogation and certainly was not the focus of the communication between Hunter and the officers.

Because the district court's finding that the threat of federal charges did not specifically motivate Hunter to confess was not clear error, this Court will defer to that finding. *See Wrice*, 954 F.2d at 410-11. Accordingly, viewing the facts in the light most favorable to the government, we do not find that Hunter's confession was involuntary.

## CONCLUSION

For the reasons set forth above, we **AFFIRM** the judgment of the district court.